# Richmond.

## GLOVER V. COMMONWEALTH.

### NOVEMBER 21st, 1889.

1. CRIMINAL PROCEEDINGS—*Rape—Attempt.*—Refusal to instruct jury that, if they believed from the evidence that prisoner intended to commit a felony, but before committing it, he voluntarily abandoned it, they were to find him not guilty, and instructing them that, on an indictment for felony, prisoner might be found guilty of an attempt to commit a felony: *held*, not error.  Code 1887, sec. 4044.

2. IDEM—*Attempt—Case at bar.*—The intent to commit a crime, and a direct, ineffectual act done toward its commission, are essential to an attempt to commit a crime.  In case here, the evidence warrants the verdict of guilty of an attempt to commit rape.

3. IDEM—*Delay to indict—Habeas corpus.*—Where, before indictment found, there was motion made and improperly overruled to discharge prisoner on the ground that two terms had elapsed since he had been held to answer without any indictment against him, the remedy was not by writ of error, but by *habeas corpus*, which is too late after final judgment.

4. IDEM—*Two terms.*—Where during a term of the court accused is sent on for indictment, that term is not considered one of the two terms at which he must be indicted under Code 1887, sec. 4001.

5. CASES OVERRULED.—A different doctrine from that stated in the last paragraph was held in *Hall's Case*, 78 Va., 678, which to that extent is overruled.

Error to judgment of the judge of the circuit court of Appomattox county, rendered December 19, 1888, refusing a writ of error to judgment of county court of said county, rendered August 9, 1888, in an indictment against the plaintiff in error, William Glover.

The prisoner was indicted at the October term, 1888, of the county court of Appomattox county, for a rape on Bertha Wright, a female child under twelve years of age. He was held to answer an indictment for the offence in the said court on the second day of its August term of the same year, but was not indicted until the October term, although a grand jury was impaneled at the September term and also at the August term. At the December term, to which term the case had been regularly continued, he was put upon his trial and found guilty by the jury of an attempt to commit a rape, and his term of confinement in the penitentiary fixed at three years. He thereupon moved for a new trial on the ground that the verdict was contrary to the law and the evidence, but the motion was overruled and judgment pronounced in accordance with the verdict. A writ of error to this judgment having been refused by the judge of the circuit court of the said county, the prisoner applied to this court for a writ of error, which was allowed. Opinion states the case.

*H. D. Flood*, for the plaintiff in error.

*Attorney-General R. A. Ayers*, for the commonwealth.

LEWIS, P., delivered the opinion of the court.

Among the exceptions taken by the prisoner at the trial was one to the refusal of the court to instruct the jury as follows: "If the jury believe from the evidence that the prisoner at the bar intended to commit a rape on the prosecutrix, Berta Wright, but before the act was finally executed, he voluntarily and freely abandoned it, they are to find a verdict of not guilty."

This exception is not well taken. To have given the instruction, would have been equivalent to telling the jury that upon an indictment for rape, the accused cannot be legally convicted

of an attempt to commit a rape, which is not the law. The court, therefore, did not err in refusing to give it, nor did it err in subsequently instructing the jury, as in effect it did, that upon an indictment for rape, the accused may be found guilty of an attempt to commit a rape, which is in accordance with the law in this state. *Givens* v. *Commonwealth,* 29 Gratt., 830; *Mings* v. *Same,* 85 Va., 638. Indeed, the statute, now brought into section 4044 of the Code expressly enacts that "on an indictment for felony, the jury may find the accused not guilty of the felony, but guilty of an attempt to commit such felony; and a general verdict of not guilty upon such indictment shall be a bar to a subsequent prosecution for an attempt to commit such felony."

The next question is, Did the court err in refusing a new trial?

The evidence for the commonwealth shows that the prisoner led the prosecutrix, a girl under twelve years of age, into a stable, and there laid her down, pulled up her clothes, and got on her. In the course of her examination as a witness before the jury, she testified that the prisoner offered her an apple if she would go to the stable with him, and that although she wanted the apple, she did not want to go with him, but that he took her by the hand and pulled her along. She also says he unbuttoned his pants and exposed his person before getting on her.

Several other children who were with the prosecutrix near the stable, when she was accosted by the prisoner, corroborate her statement as to the circumstances under which she went to the stable with him. One of them, a boy nine years of age, testified that a little while afterwards, he and the other children went to the stable, and looking in, he saw the prosecutrix lying down, and the prisoner on her, and that the private parts of both were exposed. Another, about the same age, testifies that when the prisoner came out of the stable, he told him (the witness) "not to say anything about it." It is certified, however,

as having been *proved* at the trial, that "there was no penetration or attempt to penetrate, and that the prisoner freely and voluntarily abandoned any attempt he had made to rape the prosecutrix, without any interruption or interference on the part of any third person."

The prisoner, a youth seventeen years of age, was himself examined as a witness in his own behalf, but the most of what he says is in conflict with the evidence for the commonwealth, and is therefore to be rejected, as the case here must be considered as on a demurrer to evidence, and the residue of his statement is altogether improbable. He says he took the prosecutrix to the stable to give her an apple he had promised her, which was hidden in a pile of shucks, behind a pair of draw-bars; that he got on his knees, ran his hand into the shucks, and pulled out the apple, and gave it to her, and that she then left. He also says that without getting off his knees, he rested his head on his arms, which were on the top rail of the draw-bars, and remained in that position dozing for fifteen or twenty minutes, until the children came to the stable, when he got up, and went about his business.

This is a concise but fair summary of the principal facts in the case, and it shows very clearly we think, that the judgment must be affirmed. The jury were warranted in believing from the evidence that the purpose of the prisoner in taking the prosecutrix into the stable was to ravish her, and this is sufficient to support the verdict. To attempt to carnally know a girl under twelve years of age, whether with or without her consent, is in legal contemplation, an attempt to commit a rape, because such a girl is legally incapable of consenting to the carnal act, and such an attempt has been proven here.

An attempt in criminal law is an apparent unfinished crime, and hence is compounded of two elements, viz: (1) The intent to commit a crime; and (2) a direct act done towards its commission, but falling short of the execution of the ultimate design. It need not, therefore, be the last proximate act to the

consummation of the crime in contemplation, but is sufficient if it be an act apparently adopted to produce the result intended. It must be something more than mere preparation. *Uhl's case*, 6 Gratt., 706; *Hicks' case, ante*, p. 223.

Hence, when the prisoner took the prosecutrix into the stable, and there did the acts above mentioned, the attempt to commit a rape was complete; for there was the unlawful intent accompanied by acts done towards the commission of the intended crime, but falling short of its commission. Indeed, it is not denied that there was such attempt, but it is contended—and such was the main defence at the trial—that the subsequent voluntary abandonment of the criminal purpose cleansed the prisoner of all crime, so far as the attempt was concerned. But this is a mistaken view. For on the contrary, it is a rule, founded in reason and supported by authority, that if a man resolves on a criminal enterprise, and proceeds so far in it that his act amounts to an indictable attempt, it does not cease to be such, though he voluntarily abandons the evil purpose.

In *Lewis* v. *The State*, 35 Ala., 380, which was an indictment for an attempt to commit a rape, it was ruled by the supreme court of Alabama that if the attempt was in fact made, and had progressed far enough to put the prosecutrix in terror, and render it necessary for her to save herself from the consummation of the attempted outrage by flight, then the attempt was complete, though the prisoner had not in fact touched her; and that an after-abandonment by the prisoner of his wicked purpose, could not purge the crime. And there are many other authorities to the same effect. See 1 Bish. Crim. Law, (6th ed.) sec. 732, and cases cited.

Only one other point need be mentioned. It is certified that at the term at which the indictment was found, and before the grand jury was impaneled, the prisoner moved the court to discharge him from imprisonment, on the ground that two terms had elapsed since he had been held to answer, without any in-

dictment having been found against him, and because the failure to indict was not the result of any cause which brings the case within any of the exceptions enumerated in the statute. But the motion was overruled, and this action of the court, also, is assigned as error.

It would be a sufficient answer to this assignment to say, that the question involved is not properly before us. It was not raised by plea or otherwise after the indictment was found, and consequently is not brought up for review by the writ of error. The writ extends only to such matters as occurred after the indictment was found. If the court erred in overruling the motion, the prisoner had his remedy by *habeas corpus*, and the time for that has passed, as he is now detained in custody, not by virtue of the original commitment, or the order overruling the motion, but the final judgment in the case.

It may be as well, however, to say that the motion was rightly overruled. The prisoner, it appears, was arrested for the crime for which he was afterwards indicted, on Thursday, the first day of the August term, 1888, and on the following day was taken before a justice for examination; by whom, on the same day, he was committed for trial. On the day of the arrest, a grand jury was impaneled, but was discharged the same day. The term ended on Saturday, the day after the prisoner was held to answer, and no indictment was found either at that term, or the September term, nor until the ensuing October term, although a grand jury was impaneled at the September term. We think the indictment was found in time, and we think so, because the August term is not to be counted as one of the two terms within which, according to the requisitions of the statute, the prisoner must have been indicted, or else discharged from imprisonment. Code, sec. 4001.

A similar question arose, and was decided in the same way, in *Bell's case*, 7 Gratt., 600, which was an application for a writ *habeas corpus*. In that case the day on which the prisoner was

sent on for trial was the sixth day of the term of the court at which he was held to answer, and its session continued for five days thereafter; but he was not indicted either at that term or at the next. He, thereupon, applied for a writ of *habeas corpus*, to be discharged from custody, on the ground that two terms had passed since he had been held to answer without his being indicted. But the court held otherwise, and refused the writ, on the ground that the term first above mentioned was not to be counted, because a term of the court at which a prisoner is held to answer is, within the meaning of the statute, "*a term complete by commencing on the first day.*"

Many mischiefs in the administration of criminal justice, it was said in the course of the opinion, might arise if the term of the court, though only an hour before its adjournment, or however engrossed with its business on hand, were counted for a term, because a prisoner is held to answer at this period of the term. "The term," according to the common law, it was also said, is understood as the term of a day, and that day is the first day of the term, to which all after proceedings have reference, both in civil and criminal proceedings. And this ruling was reaffirmed in *Bell's case*, 8 Gratt., 646.

A different doctrine, it is true, was held in the case of *Hall* v. *Commonwealth*, 78 Va., 678; but the point was decided without mature consideration, and without any reference to the cases just mentioned. We are entirely satisfied with the reasoning of the general court in those cases, and with its construction of the statute, which is now, as it stands in the Code, substantially as it was when those cases were decided, nearly forty years ago. *Jones* v. *Commonwealth*, 19 Gratt., 478. *Hall's case*, to this extent, is consequently overruled.

It is proper to add that it is also certified that the charge against the prisoner was not laid before the grand jury at the September term following his arrest and commitment for trial, because "the principal witness for the commonwealth, a little

girl, was unable to attend the court, on account of the weather, which was very bad and rainy." But as what has already been said is decisive of the case, it is unnecessary to say anything upon that point.

JUDGMENT AFFIRMED.