## Richmond

ROGER T. HOWARD v. COMMONWEALTH OF VIRGINIA.

June 13, 1966.

Record No. 6208.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*William E. Fulford* for the plaintiff in error.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

At the February, 1965 term of court, Roger T. Howard and Walter J. Smith, defendants, were jointly indicted for attempt to commit murder and for robbery. They entered pleas of not guilty to both indictments, waived trial by jury, and consented to be tried jointly upon both indictments at the same time. They moved to strike the Commonwealth's evidence at the conclusion thereof, and their motions were sustained as to the robbery indictment but overruled as to the attempted murder indictment. Both defendants were found guilty of attempt to commit murder and were remanded to jail. Their cases were referred to the court's probation officer for a pre-sentence report.

On April 12, 1965, the pre-sentence report was filed and a hearing was had. Prior to that time, defendant Smith had died from a fall while attempting to escape from jail, and the case against him was dismissed. Defendant Howard moved the court to set aside his conviction and to grant him a new trial on the ground that the judgment was contrary to the law and the evidence, but the motion was overruled and his punishment was fixed at confinement in the penitentiary for a term of five years. We granted Howard a writ of error.

The sole question presented in this appeal is whether the evidence was sufficient to sustain Howard's conviction for attempt to commit murder.

The record discloses that on December 28, 1964, at approximately 1:25 a.m., Officer Julius W. Lamm of the Virginia Beach Police Department received a call over his car radio concerning an automobile accident at the intersection of Cavalier drive and Holly road in Virginia Beach. He proceeded to the scene and found that a fellow officer was conducting an investigation of a two-car collision.

Defendants Smith and Howard had been the occupants of one of the vehicles. Their car, driven by Smith, had side-swiped the other vehicle and failed to stop, but the other car had given chase. In an effort to escape, Smith lost control of his automobile and it crashed into a tree. However, defendants, who had temporarily "lost" their pursuer (the driver of the other car), managed to persuade him that they had not been the occupants of the vehicle. Howard approached Lamm and falsely stated that he had seen two men walk away from the accident scene. Howard also falsely stated that he and Smith were visiting some friends who lived in the area and that they were walking to their friends' home when they came upon the accident.

Both Smith and Howard then got into Lamm's police car and accompanied him as he searched the area for the two men who had supposedly left the scene. Lamm drove four or five blocks, but his search was, of course, fruitless, and he returned to the accident scene. At that time, Smith produced an "I.D." card and a police badge, exhibited them to Lamm, and falsely stated that he too was a police officer. Both Smith and Howard gave Lamm "phony" names and addresses.

Lamm then told defendants that he would drive them to the house where they were staying. He testified: " * * * I still had a feeling that they might have been driving the car, and the fact that they said they were visiting just a couple blocks down the way, I wanted to check on them."

Lamm drove several blocks north on Holly road until Smith pointed to a house and identified it as the place where he and Howard were staying. Lamm stopped the car, and the three men walked around the house to a side entrance located on a small porch. Smith climbed the porch steps and "took ahold of the knob" of the screen door. Howard and Lamm were standing close by. Smith then turned around "as if he was having trouble with the door", and Lamm saw that he had a .45 caliber automatic pistol in his hand. Smith came down the steps, took Lamm's service revolver from him, and handed it to Howard who "stuck it in his belt."

The three men went back to the police car. Howard "placed" Lamm on the right side of the rear seat, took his white police hat from him and put it on, and got behind the steering wheel. Smith sat on the right side of the front seat in a "turned sideways" position directly opposite Lamm and about two or three feet from him. He raised the .45 automatic pistol "up over the back of the front seat" and pointed it toward Lamm. Howard drove north on Holly road about half a block and turned left. He and Smith "mentioned" that they were going to Norfolk, but the car turned into a dead-end street. Defendants realized that they were "apparently lost", so Lamm undertook to direct them out of the area. He testified:

"I mentioned the fact of the traffic light at 31st and Holly, and that the roads were *windy* on one or two occasions, and both times Mr. Smith took the 45 he had and he waved it in my face like that, and. said not to say anything about the street names or in what direction they were going, or where they were.

"From what I said, the dispatcher on the police radio could tell,

and when I said at 31st and Holly that there was a traffic light there, and to make a right there, Mr. Smith took the 45 and stuck it in my face and said not to say anything about street names or directions, and at that time Howard stated that if I said anything else about street names or conditions of the streets or directions, to 'kill him.' "

Later, defendants asked Lamm to direct them to Norfolk, and he whispered directions to them. At one point he whispered that they should make a right turn to go to Norfolk but a left turn to go away from Norfolk. Whereupon, Smith said, "All right, take a left," but he motioned with his hand to Howard to make a right turn, and Howard complied with his signal. Sometime thereafter, the car turned onto Virginia Beach Boulevard (Route 58) and proceeded toward Norfolk. Smith asked Lamm for his handcuffs and key, and Lamm gave them to him.

As the car continued along Route 58 in Norfolk Howard asked, "Are we on 460 now?" Lamm replied, "No sir, Route 58." Howard responded, "460", and Lamm again advised that they were on Route 58. After Lamm made his second reference to Route 58, Smith "thrust the 45 across the seat" in Lamm's face. According to Lamm, the hammer of the pistol "had been cocked back". (Smith denied that it had been cocked.) Lamm, who was "concerned" for his life, threw up his hand in front of his face "instinctively". It came "in contact with the side of the weapon, in order to push it aside", and the pistol "went off." Just as Lamm raised his hand Smith "yelled something, but * * * the noise of the 45 * * * drowned it out". The bullet passed through the back seat of the car about 4 inches to the left of Lamm's left shoulder.

Lamm was asked on cross-examination:

"Q. Didn't your hand glance the gun, and the gun went off.

"A. No, sir.

"Q. Didn't your hand glance the gun in his hand, and then it went off?

"A. No, sir."

Smith continued to cover Lamm with the pistol after the shot was fired, but the weapon was not discharged again.

Lamm further testified:

"After the bullet discharged, Mr. Howard at that time, slowed the vehicle down, and at that time Smith said: 'Let's pull off, and do it now,' and Howard replied: 'No, let's go on,' and so at this time,

at this point, we were just east of the Virginian Railroad overpass on Route 58, and took a left turn onto Hanson Street and then went one block and took a right to Armstrong Street, right on Percy Street, and as that was dark, Smith asked Howard to turn the headlights out and to pull on down the block, and at that time Howard, the driver of the car, said: 'All right, go ahead,' and Smith said: 'Suppose he screams?,' to which Howard replied: 'He won't scream,' and Howard asked me if I had a handkerchief, and I told him that I did, in my coat right rear pocket, and he got it and stuffed it in my mouth, and then he took my belt off my trousers. Smith got out of the right side of the car, and asked me to step out, which I did, and then they led me to a picket fence gate separating two apartment houses there, approximately 3 or 4 feet wide, and at that time they had placed my hands between the boards on the fence, and the handcuffs were put on my hands through the fence."

Defendants also wrapped Lamm's belt around his mouth and "drew it * * * back" in an effort to make it difficult for him to untie. They then got back into the police car and sped away. Shortly after they left, Lamm was able to remove the belt and handkerchief from his mouth and call for help. Two men came to his assistance and released him from the gate. The Virginia Beach police headquarters was promptly notified of the events that had transpired, and an alarm went out for defendants and the missing police car.

At about 3:00 a.m., defendants abandoned the police car while being pursued and jumped into a taxicab which was stopped for the traffic light at Bay avenue and Granby street in Norfolk. Just after they got into the cab a police car pulled up and stopped "right at the cab." Smith pointed the .45 automatic pistol at the cab driver and said, "Get the hell out of here, or I'll blow your head off." An automobile chase then ensued. According to the cab driver, defendants were both armed and "were telling me to go faster and that if I didn't go faster, they'd blow my head off." The cab traveled about 4 miles, turned into a dead-end street, and came to an abrupt stop. Several police officers went over to it. The door on the right-hand side was open, and Smith was still pointing the .45 automatic pistol at the driver. He said that if any police officer touched him he would kill the driver. One of the officers promptly "dove into" the cab and "thrust" his thumb between the hammer and firing pin of the pistol to prevent it from being fired. Smith and Howard were subdued and were subsequently indicted for the attempted murder of Officer Lamm and for the robbery of the taxi driver.

As has been stated, the trial court struck the Commonwealth's evidence as to the indictment charging Howard with the robbery of the taxi driver, and the only question for our determination is the sufficiency of the evidence to support Howard's conviction for an attempt to murder Lamm.

■ Howard concedes that whatever felonious acts Smith committed he (Howard) was equally liable therefor as a principal in the second degree. In other words, if the evidence was sufficient to convict Smith of an attempt to murder Lamm then Howard was likewise responsible for the attempt. Code, § 18.1-11 provides:

"In the case of every felony, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree, and every accessory after the fact shall be confined in jail not more than one year and fined not exceeding one thousand dollars." See *Tasker* v. *Commonwealth*, 202 Va. 1019, 1025, 1026, 121 S.E. 2d 459; *Snyder* v. *Commonwealth*, 202 Va. 1009, 1015, 121 S.E. 2d 452; *Ward* v. *Commonwealth*, 205 Va. 564, 568, 138 S.E. 2d 293; *Westry* v. *Commonwealth*, 206 Va. 508, 514, 144 S.E. 2d 427.

■ Howard takes the position that Officer Lamm was threatened so that he would be frightened "into keeping quiet"; that Smith could have easily killed Lamm either before or after the pistol was fired if he had intended to do so; that the pistol was not discharged until Lamm's hand came in contact with it; and that there was a reasonable doubt as to whether the weapon was fired intentionally as a result of Smith's voluntary pulling of the trigger or accidentally as the result of the "blow" from the hand of Lamm.

"We have frequently pointed out that an attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) the direct, ineffectual act done toward its commission which must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. *Thacker* v. *Commonwealth*, 134 Va. 767, 769, 114 S.E. 504; *Merritt* v. *Commonwealth*, 164 Va. 653, 657, 180 S.E. 395, 397; *Mullins* v. *Commonwealth*, 174 Va. 477, 478, 479, 5 S.E. (2d) 491, 492; *Granberry* v. *Commonwealth*, 184 Va. 674, 678, 36 S.E. (2d) 547, 548; *Ingram* v. *Commonwealth*, 192 Va. 794, 802, 66 S.E. (2d) 846, 851." *Slusher* v. *Commonwealth*, 196 Va. 440, 443, 444, 83 S.E. 2d 719. See also 9 M.J., Homicide, § 35, p. 375; 2 M.J., Attempts and Solicitations, §§ 4, 5, pp. 375, 376.

In 21 Am. Jur. 2d, Criminal Law, § 110, pp. 188, 189, it is said:

"An attempt to commit a crime was itself an indictable offense at common law. The question as to what constitutes an attempt is often intricate and difficult to determine, and no general rule can be laid down which will serve as a test in all cases. Each case must be determined on its own facts, but there are certain well-established principles which may be applied. An attempt has been defined as any overt act done with the intent to commit the crime, and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime. * * *." See also *Hicks* v. *Commonwealth*, 86 Va. 223, 227, 228, 9 S.E. 1024; *Lynch* v. *Commonwealth*, 131 Va. 769, 774, 109 S.E. 418; Wharton, *Criminal Law and Procedure*, Vol. 1, §§ 71, 74; Clark and Marshall, *Crimes*, 5th ed., §§ 117, 118.

Intent is the purpose formed in a person's mind and may, like any other fact, be shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements. *Merritt* v. *Commonwealth*, 164 Va. 653, 662, 180 S.E. 395; *Banovitch* v. *Commonwealth*, 196 Va. 210, 216, 83 S.E. 2d 369; Clark and Marshall, *Crimes*, 5th ed., § 115, p. 171. "A man is presumed to have intended the immediate, direct and necessary consequences of his voluntary act." *Dawkins* v. *Commonwealth*, 186 Va. 55, 62, 41 S.E. 2d 500.

We hold that the evidence, when tested by the foregoing principles of law, was sufficient to support the trial court's finding that Howard was guilty of an attempt to murder Lamm. Howard told Smith that if Lamm said anything else about "street names or conditions * * * or directions" to kill him. Thereafter, when Howard inquired whether they were on Route 460 and Lamm said that they were on Route 58 Smith thrust the cocked pistol in Lamm's face. It was discharged just as Lamm raised his hand "instinctively" and pushed it aside. It could have been fairly inferred from Lamm's testimony that he did not cause the pistol to be fired. The bullet barely missed Lamm's left shoulder. The firing of the weapon constituted an overt act which was the commencement of the consummation of the crime of murder. The trial court had a right to conclude that Lamm's act of pushing the pistol aside was an extraneous circumstance independent of the will of defendants which prevented them from carrying out their intent to commit murder. Defendants' threats and conduct, when considered in the light of the attending

circumstances, were sufficient to show that the criminal purpose had been formed in their minds.

We find little merit in Howard's argument that because Smith could have easily killed Lamm before or after the shot was fired but did not do so the shooting was unintentional. There was ample evidence to establish that Smith committed the act of pulling the trigger with the intent to kill. The fact that he could have done so prior thereto is not controlling, and "it is a rule, founded in reason and supported by authority, that if a man resolves on a criminal enterprise, and proceeds so far in it that his act amounts to an indictable attempt, it does not cease to be such, though he voluntarily abandons the evil purpose." *Glover* v. *Commonwealth*, 86 Va. 382, 386, 10 S.E. 420. See also 21 Am. Jur. 2d, Criminal Law, § 110, p. 190; Wharton *Criminal Law and Procedure*, § 76, p. 161; and Clark and Marshall, *Crimes*, 5th ed., § 121, p. 178.

Accordingly, the judgment appealed from is

*Affirmed.*