ELDER, J., with whom FELTON, C.J.,
joins, concurring, in part, and dissenting, in part.
I concur with the en banc majority’s statement that, under the doctrine of forfeiture by wrongdoing, evidence which is testimonial may “ ‘not be admitted without a showing that the defendant intended to prevent a witness from testifying.’” See supra at 472-73, 686 S.E.2d at 564 (quoting Giles v. California, — U.S. -, -, 128 S.Ct. 2678, 2684, 171 L.Ed.2d 488, 497 (2008)). I also concur in the majority opinion to the extent it holds that the trial court, “[b]y not *483 considering [appellant’s] intent, ... incorrectly applied the forfeiture by wrongdoing doctrine, as it was defined in Giles.” See supra at 474, 686 S.E.2d at 565. However, this is where my agreement ends.
Further relying upon Giles, the majority concludes that,
[i]f this were the end of our analysis, we would remand this case ... to the trial court for it to determine on retrial whether an intent on the part of [appellant] ‘to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution’ can be reasonably inferred from the facts and circumstances of the case.
See id. (quoting Giles, — U.S. at-, 128 S.Ct. at 2693, 171 L.Ed.2d at 506). I believe the procedural history of this case, which stands in marked contrast to Giles, renders consideration of the issue of intent on remand improper.
The majority also concludes that the forfeiture-by-wrongdoing doctrine did not prevent admission of the affidavit because the affidavit was not testimonial under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and its progeny. I continue to adhere to the view of the panel majority that whether the affidavit was testimonial for purposes of Confrontation Clause analysis is not before us on appeal. However, even if the issue of whether the affidavit is testimonial is properly before us, I believe controlling authority of the United States Supreme Court compels the conclusion that it is, in fact, testimonial. Because I believe the victim’s affidavit was erroneously admitted and that its admission was harmless only with respect to appellant’s conviction for grand larceny, I would reverse his convictions for abduction with intent to defile, rape, capital murder, use of a firearm in the commission of abduction, and use of a firearm in the commission of murder, and I would remand for retrial.
Thus, I respectfully dissent from the majority’s affirmance of all of appellant’s convictions except grand larceny.
*484 I.
A.
APPELLANT’S INTENT
Relying upon Giles, the majority concludes that if the affidavit were testimonial, the appropriate course of action would be to remand “to the trial court for it to determine on retrial whether an intent on the part of [appellant] ‘to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution’ can be reasonably inferred from the facts and circumstances of the case.” See supra at 474, 686 S.E.2d at 565 (quoting Giles, — U.S. at-, 128 S.Ct. at 2693, 171 L.Ed.2d at 506). I believe the procedural history of this case, which stands in marked contrast to Giles, renders consideration of the issue of intent on remand improper.
In Giles, trial occurred before the United States Supreme Court’s decision in Crawford v. Washington. See People v. Giles, 40 Cal.4th 833, 55 Cal.Rptr.3d 133, 152 P.3d 433, 437 (2007). In Giles, “the issue of forfeiture by wrongdoing was not litigated below,” and “evidence of [the declarant’s] hearsay statements was admitted under a statutory hearsay exception that appeared to be valid at the time [of the defendant’s trial].” Id. (involving “a hearsay exception for out-of-court statements describing the infliction of physical injury on the declarant when the declarant is unavailable to testify at trial and the statements are trustworthy”). Although the forfeiture issue was not litigated below, the California Court of Appeal nevertheless “addressed the forfeiture issue [in Giles],” concluding the exception applied “because it was undisputed that [the declarant] was unavailable to testify because of her death and that her death was the result of [the] defendant’s actions.” Id. Thus, the People had no opportunity at trial to present evidence regarding whether the defendant killed the victim with the intent to prevent her from testifying.
*485 In appellant’s case, by contrast, appellant filed a pretrial motion in limine to exclude the affidavit, and the Commonwealth filed a written response in which it expressly argued the trial court should apply the forfeiture-by-wrongdoing exception to the hearsay rule to admit Mrs. Crawford’s statements in the affidavit. The Commonwealth argued this exception did not require the trial court to find appellant had killed Mrs. Crawford to prevent her from testifying and instead required only a preliminary finding that appellant did kill her. Although the Commonwealth indicated during the motion hearing that it had “been talking with witnesses for months” and that “the last couple of weeks have been pretty in-depth,” it did not aver in the alternative, either in its written response to the motion or its argument to the court, that it could offer evidence which would, in fact, support a finding that appellant killed Mrs. Crawford with the intent to prevent her from testifying against him.
The trial court articulated the dispute as being over whether the forfeiture-by-wrongdoing exception required proof of three elements—including proof that the defendant committed the charged crime with the intent to prevent the victim from testifying—or only two, not including this specific intent element. It then engaged in the following exchange with the Commonwealth:
THE COURT: ... First of all, do you agree that we’d have to have an evidentiary hearing? In other words, that at this stage of the proceedings ... roughly two weeks before trial, that as a practical matter the way this matter will go forward assuming that the Court finds that ... there’s been sufficient evidence to show a wrongful taking of the life of the victim here. That would take place during the Commonwealth’s case-in-chief and then there will be a point where the Commonwealth would rest and ... the Court would have to rule on whether the motion in limine would be granted or not.
[THE COMMONWEALTH]: Yes, Your Honor....
THE COURT: All right, and I take it, based on the proffer of evidence ... from preliminary hearing and from *486 the briefs, ... that the evidence is not likely to show that there was some proof of intent to keep the victim from testifying, per se. That ... the Commonwealth’s theory is that it was ... a wrongful killing and that the Commonwealth believes it will be able to show by a preponderance, and that’s all the Commonwealth needs to have[,] ... that it’s a two-prong and not a three-prong test. Is that right?
[THE COMMONWEALTH]: That’s correct, Your Honor____
Thus, the Commonwealth conceded it could not meet such an evidentiary standard if the court were to hold such a standard applied.
“A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.” Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006); see also Montague v. Commonwealth, 40 Va.App. 430, 438-39, 579 S.E.2d 667, 671 (2003) (applying this principle where the defendant conceded at trial that the license number on the vehicle he drove was the same as the license number of the stolen vehicle, thereby preventing him from arguing on appeal that the license numbers were different). “The Commonwealth^ like any other litigant,] will not be allowed to approbate and reprobate.” In re Commonwealth, 278 Va. 1, 13, 677 S.E.2d 236, 241 (2009) (“We will not permit the Commonwealth to ask the circuit court during the remanded hearing on mental retardation to exercise discretion and rule upon other legal issues but, inconsistently, assert in the mandamus proceeding that the circuit court lacked legal authority to do so.”).
Because the Commonwealth conceded at trial that it could not establish appellant killed Mrs. Crawford to prevent her from testifying, it may not take a contrary position on remand. To the extent the Supreme Court’s holding in In re Department of Corrections, 222 Va. 454, 465, 281 S.E.2d 857, 862 (1981), allows the Attorney General to repudiate a factual concession believed to have been taken erroneously by the *487 Commonwealth’s Attorney in the trial court, this holding does not override the result I would reach in this case. The majority references this portion of my analysis as averring that the Commonwealth approbates and reprobates “by taking inconsistent positions at trial and on appeal.” See supra at 475 n. 12, 686 S.E.2d at 565 n. 12. The majority, however, misconstrues my analysis. Whether or not the Attorney General, on appeal, disavows the Commonwealth’s Attorney’s position at trial, if this case is remanded to the trial court for additional findings of fact on the issue of intent, it is the Commonwealth’s Attorney, not the Attorney General, who will be allowed to present evidence on an issue he has already conceded. This is precisely the sort of approbating and reprobating the Supreme Court held in In re Commonwealth that the Commonwealth’s Attorney will not be permitted to engage in.
Further, the majority implies that the Court in Giles created a whole new test for establishing forfeiture by wrongdoing in the domestic context. See id. I disagree. As the majority articulates in the text prior to that footnote, the Supreme Court indicated merely that “in a case of ongoing domestic violence,” “a defendant’s intention to prevent testimony might be inferred from the surrounding circumstances.” See supra at 473, 686 S.E.2d at 564. Under well established principles, in any ease in which proof of intent is required, intent may and often must be established with circumstantial evidence, and evidence probative of that intent may include the accused’s statements and conduct, see, e.g., Howard v. Commonwealth, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966) (citing Merritt v. Commonwealth, 164 Va. 653, 662, 180 S.E. 395, 399 (1935)), including prior bad acts of the accused toward the victim, see, e.g., Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). Thus, the Court’s discussion in Giles of the fact that intent supporting admissibility may be proved with evidence of “[ejarlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help” or “evidence of ongoing criminal proceedings at which the *488 victim would have been expected to testify” hardly breaks new legal ground.
In any event, because the majority concludes the affidavit was not testimonial and, thus, that it was properly admitted regardless of whether appellant killed Mrs. Crawford with the intention of preventing her from testifying against him, the majority’s rationale regarding how the Commonwealth might go about proving a defendant in a domestic violence case intended to prevent a witness from testifying in order to invoke the forfeiture-by-wrongdoing doctrine is dictum.
B.
TESTIMONIAL NATURE OF THE AFFIDAVIT

1. Whether the affidavit contains testimonial hearsay is not before us in this appeal.

The trial court held the affidavit was testimonial but that its admission did not violate the Confrontation Clause because the forfeiture-by-wrongdoing doctrine applied. The Commonwealth had no right to appeal the ruling that the affidavit was testimonial, and it would have had no right to appeal even if the trial court had excluded the affidavit on the grounds appellant alleged. Code § 19.2-398, which governs the Commonwealth’s right of appeal, provides in relevant part as follows:
A. In a felony case a pretrial appeal from a circuit court may be taken by the Commonwealth from:
1. An order of a circuit court dismissing a warrant, information or indictment, or any count or charge thereof on the ground that (i) the defendant was deprived of a speedy trial in violation of the provisions of the Sixth Amendment to the Constitution of the United States, Article I, Section 8 of the Constitution of Virginia, or § 19.2-243; or (ii) the defendant would be twice placed in jeopardy in violation of the provisions of the Fifth Amendment to the Constitution of the United States or Article I, Sectiob 8 of the Constitution of Virginia; or
*489 2. An order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Section 8, 10 or 11 of the Constitution of Virginia prohibiting illegal searches and seizures and protecting rights against self-incrimination, provided the Commonwealth certifies that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.
B. A petition for appeal may be taken by the Commonwealth in a felony case from any order of release on conditions pursuant to Article 1 (§ 19.2-119 et seq.) of Chapter 9 of this title.
C. A petition for appeal may be taken by the Commonwealth in a felony case after conviction where the sentence imposed by the circuit court is contrary to mandatory sentencing or restitution terms required by statute.
D. Nothing in this chapter shall affect the Commonwealth’s right to appeal in civil matters or cases involving a violation of law relating to the state revenue or appeals pursuant to § 17.1-411 or subsection C of § 19.2-317.
E. A pretrial appeal may be taken in any criminal case from an order of a circuit court dismissing a warrant, information, summons, delinquency petition, or indictment, or any count or charge thereof, on the ground that a statute or local ordinance on which the order is based is unconstitutional.
Manifestly, subsections (A)(1), (B), (C), (D) and (E) would not apply to permit an appeal of a ruling that admission of the affidavit the victim completed to accompany her earlier protective order request violated appellant’s Confrontation Clause rights. Further, subsection (A)(2) applies only to evidence alleged to have been “obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Section 8, 10 or 11 of the Constitution of Virginia prohibiting illegal searches and sei *490 zures and protecting rights against self-incrimination.” Code § 19.2-398(A)(2) (emphases added); see Commonwealth v. Hawkins, 10 Va.App. 41, 43-44, 390 S.E.2d 3, 4-5 (1990) (interpreting the statute to hold that all appeals under the subsection (A)(2) language are limited to “those involving illegal searches and seizures and violations of rights against self-incrimination”). Here, there is no allegation that the victim’s protective order affidavit was “obtained” in a way delineated in the statute.
Thus, the Commonwealth lacked the right to ask this Court to revisit that issue in appellant’s appeal because to do so would “serve as a subterfuge for a constitutionally prohibited cross-appeal.” See White v. Commonwealth, 37 Va.App. 658, 665, 561 S.E.2d 12, 16 (2002) (noting that although we may, under appropriate circumstances, “affirm the decision of the trial court when it has reached the right result for the wrong reason[,] ... ‘the Commonwealth cannot use [this principle] as a subterfuge for a constitutionally prohibited cross-appeal’ ” (quoting Driscoll v. Commonwealth, 14 Va.App. 449, 452, 417 S.E.2d 312, 313 (1992))); see also Hart v. Commonwealth, 221 Va. 283, 289-90, 269 S.E.2d 806, 810-11 (1980).

2. Even if we properly may consider the nature of the affidavit, its contents are testimonial.

Even if we were not bound by the trial court’s ruling regarding the nature of the affidavit’s contents, the Supreme Court’s pronouncements in this area compel the conclusion that the statements in the affidavit are, in fact, testimonial hearsay. The majority’s reliance on the “primary purpose” language in Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), is flawed, as a careful analysis of the Supreme Court’s decisions in Crawford, Davis, and Melendez-Diaz v. Massachusetts, — U.S.-, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), reveals.
In Crawford, the Court noted the existence of “[v]arious formulations of th[e] core class of ‘testimonial’ statements”:
*491 “ex parte in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,” Brief for Petitioner 23; “extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,” White v. Illinois, 502 U.S. 346, 365[, 112 S.Ct. 736, 747, 116 L.Ed.2d 848, 865] (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,” Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3.
Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193. Declining to adopt a specific definition, the Court held that “[rjegardless of the precise articulation, some statements qualify under any definition,” and it gave as examples “ex parte testimony at a preliminary hearing,” “before a grand jury, or at a former trial,” and “[statements taken by police officers in the course of interrogations.” Id. at 52, 68, 124 S.Ct. at 1364, 1374, 158 L.Ed.2d at 193, 203. It noted that “[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.” Id. at 51, 124 S.Ct. at 1364, 158 L.Ed.2d at 192.
In Davis, the Court distinguished between types of statements made to law enforcement officers. It held that answers to questions posed by law enforcement officers for the purpose of addressing an ongoing emergency during a 911 call were non-testimonial, whereas answers to questions given “when the circumstances objectively indicate that there is no such ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution” are testimonial. 547 U.S. at 822, 126 S.Ct. at 2273-74, 165 L.Ed.2d at 237. It noted it did not hold “that statements made in the absence of *492 any interrogation are necessarily nontestimonial” because “[t]he Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.” Id. at 822 n. 1, 126 S.Ct. at 2274 n. 1, 165 L.Ed.2d at 237 n. 1. In support of this assertion, it cited the fact that part of the evidence used to prosecute Sir Walter Raleigh for treason, and which served as part of the impetus for reform, was a letter from his alleged accomplice, Lord Cobham, “which was plainly not the result of sustained questioning.” Id.; see Crawford, 541 U.S. at 44, 124 S.Ct. at 1360, 158 L.Ed.2d at 188. It noted that
[m]ost of the American cases applying the Confrontation Clause or its state constitutional or common-law counterparts involved testimonial statements of the most formal sort—sworn testimony in prior judicial proceedings or formal depositions under oath—which invites the argument that the scope of the Clause is limited to that very formal category[,][b]ut [that] the English cases that were the progenitors of the Confrontation Clause did not limit the exclusionary rule to prior court testimony and formal depositions.
Davis, 547 U.S. at 826, 126 S.Ct. at 2275-76, 165 L.Ed.2d at 239. Finally, it observed,
The question before us in Davis, then, is whether, objectively considered, the interrogation that took place in the course of the 911 call produced testimonial statements. When we said in Crawford, [541 U.S.] at 53[, 124 S.Ct. at 1365, 158 L.Ed.2d at 194], that “interrogations by law enforcement officers fall squarely within [the] class” of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial. It is, in the terms of the 1828 American dictionary quoted in Crawford, ‘“[a] solemn declaration or affirmation made for the pur *493 pose of establishing or proving some fact.’ ” 541 U.S. at 51[, 124 S.Ct. at 1364, 158 L.Ed.2d at 192].
Id. at 826, 126 S.Ct. at 2276, 165 L.Ed.2d at 239-40.
Davis in no' way purported to narrow the definition of “testimonial” provided in Crawford and specifically stated it did not reach the issue of “whether and when statements made to someone other than law enforcement personnel are ‘testimonial.’ ” Id. at 823 n. 2, 126 S.Ct. at 2274 n. 2, 165 L.Ed.2d at 238 n. 2. Thus, Davis unequivocally does not stand for the proposition that a prior statement, regardless of its form, nature or context, is testimonial only upon proof that its “primary purpose” was “to establish or prove past events potentially relevant to a later criminal prosecution.” 547 U.S. at 822, 126 S.Ct. at 2274, 165 L.Ed.2d at 237.
Most recently, in Melendez-Diaz, the Court considered the character, for Confrontation Clause purposes, of “statements” not made in response to any sort of direct police questioning— those contained in a certificate “reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine.” In the course of holding the certificate at issue contained testimony subject to the requirements of the Confrontation Clause, the Court provided clarification concerning what types of statements are testimonial. — U.S. at -, 129 S.Ct. at 2531-32, 174 L.Ed.2d at 321. It quoted the three “formulations of this core class of testimonial statements” it had recited in Crawford. Id. at-, 129 S.Ct. at 2531, 174 L.Ed.2d at 321. The Court had noted in Crawford that these descriptions “share[d] a common nucleus and then define[d] the Clause’s coverage at various levels of abstraction around it,” but it declined in Crawford to adopt one test over the others. 541 U.S. at 51-52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193.
In Melendez-Diaz, however, the Court quoted all three tests as “describing] the class of testimonial statements covered by the Confrontation Clause” and held “[t]here is little doubt that the documents at issue [here] fall within the ‘core class of testimonial statements’ thus described” because “the descrip *494 tion of that category mentions affidavits twice.” — U.S. at -, 129 S.Ct. at 2532, 174 L.Ed.2d at 321; see id. at-, 129 S.Ct. at 2543, 174 L.Ed.2d at 333 (Thomas, J., concurring in part and concurring in the judgment) (writing separately to note his continued adherence to the position that the Confrontation Clause is implicated by extrajudicial statements “only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions” and opining that the certificates of analysis “at issue in this case ‘are quite plainly affidavits’ ” under this definition). Thus, among the core class of testimonial statements covered by the Confrontation Clause, the Court in Melendez-Diaz included “ ‘extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,’ ” without requiring any separate showing that these materials were prepared in anticipation that they were likely to be used prosecutorially. Id. at-, 129 S.Ct. at 2531-32, 174 L.Ed.2d at 321 (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193). It held that although the documents at issue were “denominated ... ‘certificates’ ” by the relevant state law, they were
quite plainly affidavits: “declaration^ of facts written down and sworn to by the declarant before an officer authorized to administer oaths[,]” Black’s Law Dictionary 62 (8th ed. 2004)[,] ... “ ‘made for the purpose of establishing or proving some fact[,]’ ” Crawford, [541 U.S.] at 51[, 124 S.Ct. at 1364, 158 L.Ed.2d at 192] (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).

Id.

The Court made the following additional observations but did not hold that such proof was required to establish the certificates of analysis were testimonial:
Here, moreover, not only were the affidavits “ ‘made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,’ ” Crawford, [541 U.S.] at 52, [124 S.Ct. at 1364, 158 L.Ed.2d at 193], but under Massachusetts law the sole purpose of the affidavits was to provide “prima *495 facie evidence of the composition, quality, and the net weight” of the analyzed substance.
In short, under our decision in Crawford the analysts’ affidavits were testimonial statements, and the analysts were “witnesses” for purposes of the Sixth Amendment.
Id. at-, 129 S.Ct. at 2532, 174 L.Ed.2d at 321-22 (citation omitted) (first emphasis added); see id. at-, 129 S.Ct. at 2543, 174 L.Ed.2d at 333 (Thomas, J., concurring in part and concurring in the judgment).
In sum, when the document at issue is an “ ‘extrajudicial statement ] ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony or confessions,’ ” a majority of the Court has not required proof that the “declarant[] would reasonably expect [the statement] to be used prosecutorially” or would reasonably expect “the statement would be available for use at a later trial.” Id. at -, 129 S.Ct. at 2532, 174 L.Ed.2d at 321 (quoting Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364, 158 L.Ed.2d at 193); id. at-, 129 S.Ct. at 2543, 174 L.Ed.2d at 333 (Thomas, J., concurring in part and concurring in the judgment). Such knowledge is inherent in the nature of making a sworn statement, thereby obviating the need for separate proof. Here, the affidavit Mrs. Crawford signed under oath was testimonial under this definition.
Even under a narrower definition, Mrs. Crawford was “[a]n accuser who [made] a formal statement [about appellant] to [a] government officer[]” and, thus, “[bore] testimony” against him. See Crawford, 541 U.S. at 51, 124 S.Ct. at 1364, 158 L.Ed.2d at 192. She completed the affidavit to support her request for a protective order against appellant, her alleged domestic abuser. Because the affidavit was a sworn statement designed to protect Mrs. Crawford from her husband’s potentially criminal harassment,' it is clear that the declarant, Mrs. Crawford, would reasonably expect the statement would be “potentially relevant to [and available for use in a] later criminal prosecution” on the subject if one should arise. See Davis, 547 U.S. at 822, 126 S.Ct. at 2274, 165 L.Ed.2d at 237.
*496 Contrary to the majority’s claim, a proceeding for a protective order is not wholly or even primarily civil. As the majority recognizes, although the Confrontation Clause “applies] only to ‘criminal’ matters,” the United States Supreme Court has held in other contexts that “the labels ‘civil’ and ‘criminal’ are not dispositive.” See supra at 480 n. 18, 686 S.E.2d at 568 n. 18. As the majority also recognizes, “ ‘[t]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford.’ ” See id. (quoting Hicks v. Feiock, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721, 731 (1988)). Although the procedure for obtaining a preliminary protective order is ex parte and focuses on protecting the person who sought the order, this does not compel the conclusion that the order is purely civil or injunctive in nature. Pursuant to the statutory scheme, violation of a protective order is punishable as contempt. Contempt may be civil or criminal:
“The distinction between refusing to do an act commanded,—remedied by imprisonment until the party performs the required act; and doing an act forbidden,—punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment.” Gompers [v. Buck’s Stove & Range Co.], 221 U.S. [418,] 443[, 31 S.Ct. 492, 499, 55 L.Ed. 797, 807 (1911)].
Hicks, 485 U.S. at 632, 108 S.Ct. at 1430, 99 L.Ed.2d at 732. Because a protective order, by its very nature, forbids certain conduct, the punishment for violating it most closely resembles criminal contempt. Further reinforcing this inference is that, pursuant to the express terms of the statutory scheme, once a protective order has been issued and served on the party against whom it was entered, any violation of the order subjects the party both to liability for contempt of court and to the explicit “penalty” of being found “guilty of [at least] a Class 1 misdemeanor.” Code §§ 16.1-253.1, -253.2 (also providing heightened “punishment[s]” for repeat offenses where the original or subsequent offense “was based on an act or threat of violence”).
*497 Finally, even assuming characterization of the proceeding as civil is proper, the affidavit alleged appellant committed numerous serious criminal offenses against Mrs. Crawford, including “forcibly rap[ing] her, threatening] her life, and physically and verbally abus[ing] her.” See supra at 464, 686 S.E.2d at 560. Thus, when Mrs. Crawford executed the affidavit, she clearly was an accuser making a formal testimonial statement to the government officer who entered the order within the meaning of the Confrontation Clause, even if the primary purpose of the order was an attempt to protect her from future harm caused by appellant rather than to punish appellant for past behavior.
C.
HARMLESS ERROR
Because I would conclude the trial court committed constitutional error by admitting Mrs. Crawford’s affidavit to prove the truth of its contents, I would also consider whether the introduction of this evidence affected the jury’s decision, i.e., if this error was harmless. For the reasons set out in Part 11(A)(2) of the panel majority in this case, see Crawford v. Commonwealth, 53 Va.App. 138, 152-62, 670 S.E.2d 15, 22-26 (2008), I would conclude the erroneous admission of this evidence was harmless only as to appellant’s conviction for grand larceny and was not harmless as to his remaining convictions, thereby requiring their reversal and remand for retrial.[20]
*498 II.
In sum, I concur in the en banc majority opinion only to the extent it holds the trial court incorrectly applied the forfeiture-by-wrongdoing doctrine because it did not require a showing that appellant intended to prevent the victim from testifying against him. Based on the principle that a party may not approbate and reprobate, I would hold the Commonwealth is bound by its concessions at trial that appellant did not kill the victim to prevent her from testifying and may not seek to prove otherwise on remand. I would also hold that controlling precedent of the United States Supreme Court compels the conclusion, as the trial court held, that the affidavit was testimonial. Thus, I would hold the trial court’s admission of the affidavit violated the Confrontation Clause. Finally, I would conclude that this erroneous admission was not harmless except as to appellant’s grand larceny conviction, thereby requiring reversal of his other convictions and remand for retrial in a proceeding in which the affidavit is not admitted. Thus, I respectfully dissent.

. Appellant also challenges the sufficiency of the evidence to support his convictions for rape and abduction with intent to defile. If an appellate court concludes the evidence including any improperly admitted evidence is insufficient to support a defendant’s convictions, remand for retrial on those charges violates double jeopardy principles. See Hargraves v. Commonwealth, 37 Va.App. 299, 312-13, 557 S.E.2d 737, 743 (2002); Parsons v. Commonwealth, 32 Va.App. 576, 581, 529 S.E.2d 810, 812-13 (2000). In appellant’s case, I conducted this double jeopardy analysis on behalf of the panel majority, which held the evidence including the affidavit was insufficient to support appellant’s convictions for rape and abduction with intent to defile. Crawford, 53 Va.App. at 155-57, 160-61, 670 S.E.2d at 23-24, 26. As a result, the *498 panel majority held that dismissal of these indictments and the indictments which depended upon them'—capital murder and use of a firearm in the commission of abduction—was required. Id.
Despite this analysis at the panel stage, counsel for appellant took the position in oral argument on rehearing en banc that the evidence including the affidavit is, in fact, sufficient to prove rape and abduction with intent to defile. Because appellant conceded the legal sufficiency of the evidence on this point, I conclude remand is appropriate without reaching the issue regarding whether double jeopardy principles would require dismissal of these indictments. See Logan v. Commonwealth, 47 Va.App. 168, 172 n. 4, 622 S.E.2d 771, 773 n. 4 (2005) (en banc) (reasoning that where an appellate court accepts a concession on a legal issue, that concession provides "not ... a basis for deciding [the earlier] contested issue of law, but ... a basis for not deciding it” (emphasis added)).