582 S.E.2d 851

**STATE of West Virginia ex rel. John H. SHIFFLET, Petitioner**

v.

**Edward RUDLOFF, Administrator of the Eastern Regional Jail, Respondent.**

No. 30968.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided May 8, 2003.

John P. Adams, Public Defender Corporation, Martinsburg, for Petitioner.

Christopher C. Quasebarth, Assistant Prosecuting Attorney, Martinsburg, for Respondent.

PER CURIAM:

Petitioner John H. Shifflet requests a Writ of Habeas Corpus permitting his release on bond. Police in Berkeley County arrested Mr. Shifflet for bank robbery on October 3, 2001. He remained in jail or in a mental hospital for over a year without having his case presented to a grand jury. Subsequent to the filing of his petition with this Court, but prior to oral argument in his case, a special grand jury in Berkeley County indicted him for bank robbery. Mr. Shifflet argues that W. Va.Code § 62–2–12 (1923) requires the state to indict an incarcerated person within two terms of court or, in the absence of certain exceptions, release the

## I.

### FACTS

On October 3, 2001, John H. Shifflet was charged by warrant with bank robbery and was incarcerated in the Eastern Regional Jail in lieu of $50,000 bond. The court set a preliminary hearing for October 15, 2001, but counsel for Mr. Shifflet requested a continuance of that hearing so that experts could determine Mr. Shifflet's competency to stand trial. A psychologist conducted an initial examination, and by report dated November 9, 2001, declared Mr. Shifflet to be mentally ill. Because of this initial determination, counsel for Mr. Shifflet requested a more complete competency and criminal responsibility evaluation.

The court ordered this evaluation on December 7, 2001, but according to Mr. Shifflet, the order was not entered until February 8, 2002. It is unclear from the limited record before us precisely when and where this evaluation took place. The circuit court did not hold a status hearing until April 5, 2002, at which time a report from doctors at Sharpe Hospital (the state mental hospital in Weston, West Virginia) suggested that Mr. Shifflet was not competent to stand trial. As a result, the court ordered Mr. Shifflet committed to Sharpe Hospital for six months. By September 26, 2002, doctors believed that Mr. Shifflet's condition had improved, and Mr. Shifflet returned to the Eastern Regional Jail on October 7, 2002. Apparently still unable to post bond, Mr. Shifflet remained incarcerated.

Mr. Shifflet avers that a grand jury met in Berkeley County on October 29, 2001 and February 18, May 20, and October 14, 2002. However, at no point during these proceedings did a grand jury indict Mr. Shifflet for any crime. Believing this lack of an indictment to be a violation of W. Va.Code § 62–2–12 (1923), counsel for Mr. Shifflet filed on October 29, 2002 a Motion for Bond Review requesting that bond be reduced from $50,000 to a personal recognizance bond. At this time, the court had not yet determined Mr. Shifflet's competency to stand trial. The court held two hearings on this motion on November 1 and November 8, 2002. At the first hearing, the court considered the report from Sharpe Hospital and found Mr. Shifflet competent to stand trial. At the November 8th hearing, the court considered Mr. Shifflet's argument that the state's failure to indict him required his release, but ultimately denied his motion by order dated November· 13, 2002. The same day, counsel for Mr. Shifflet filed an Emergency Petition for a Writ of Habeas Corpus with this Court.

Before this Court could hear the argument of the parties, a special term of the Berkeley County Grand Jury indicted Mr. Shifflet for bank robbery on January 7, 2003. Although the respondent moved this Court to dismiss Mr. Shifflet's petition as moot, the Court heard the oral argument of the parties on January 15, 2003. Because this Court finds that the state's delay in presenting Mr. Shifflet's case to a grand jury indeed violates W. Va.Code § 62–2–12 (1923), we grant the requested Writ of Habeas Corpus.

## II.

### STANDARD OF REVIEW

Petitions requesting writs of habeas corpus fall within the original jurisdiction of this Court:

> The Supreme Court of Appeals has original jurisdiction in cases of habeas corpus, mandamus and prohibition and appellate jurisdiction in all other cases mentioned in Article VIII, Section 3, of the Constitution of this State and in such additional cases as may be prescribed by law . . . .

Syl. pt. 10, in part, *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). The respondent filed a motion prior to argument requesting that this Court dismiss the case as moot because a grand jury finally indicted Mr. Shifflet for bank robbery. In reply, counsel for Mr. Shifflet argues that this case is not moot because others could easily find themselves in a similar situation in the future and that some clarification on this point of law is necessary. We have often stated that:

A case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review.

Syl. pt. 1, *State ex rel. M.C.H. v. Kinder,* 173 W.Va. 387, 317 S.E.2d 150 (1984). This is clearly an issue that is capable of repetition. We have also explained the way in which this Court will review a technically moot issue.:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. pt. 1, *Israel by Israel v. W. Va. Secondary Schools Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989). We feel that this issue of great public interest should be examined, in spite of the fact that a grand jury has now indicted Mr. Shifflet. Because we find this is not a moot question, we proceed with an analysis of Mr. Shifflet's request.

### III.

### DISCUSSION

Mr. Shifflet makes a very straightforward argument. He claims that the state may not deprive him of his liberty for more than two terms of court without presenting his case to the grand jury. The respondent argues that any delay in Mr. Shifflet's criminal proceeding was due to defense counsel's request for a mental competency evaluation, that the steps taken by the court adequately protected Mr. Shifflet's liberty, and that the time Mr. Shifflet spent in the mental hospital should toll the running of the two term limit contained in the applicable statute. The statute in question, also sometimes called the "two term rule" reads:

> **Discharge of imprisoned person upon failure to indict within certain time; person not indicted by reason of insanity.**
>
> A person in jail, on a criminal charge, *shall be discharged from imprisonment if he be not indicted before the end of the second term of the court,* at which he is held to answer, unless it appear to the court that material witnesses for the State have been enticed or kept away, or are prevented from attendance by sickness or inevitable accident, and *except also that, when a person in jail, on a charge of having committed an indictable offense, is not indicted by reason of his insanity at the time of committing the act, the grand jury shall certify that fact to the court; whereupon the court may order him to be sent to a state hospital for the insane, or to be discharged.*

W. Va.Code § 62–2–12 (1923) (emphasis added). Mr. Shifflet points out that he was incarcerated October 3, 2001 and, at the time he filed his petition with this Court on November 13, 2002, more than two terms of court had passed without his indictment. He also notes that the portion of the statute regarding material witnesses is not applicable, and that, at the time he filed his petition, no grand jury had considered his mental condition. Because none of the exceptions apply, he argues, the statute commands his discharge from imprisonment.

In reply, respondent first argues that any delay in Mr. Shifflet's indictment is attributable to defense counsel's request for a competency evaluation. Respondent correctly points out that the prosecution of the mentally incompetent violates due process, and suggests that it acted in good faith by awaiting a resolution on the competency issue before proceeding with Mr. Shifflet's prosecution. This Court has stated that: "No principle is more firmly enshrined in Anglo–American criminal jurisprudence than the prohibition against subjecting a mentally incompetent defendant to trial." *State v. Sanders,* 209 W.Va. 367, 376, 549 S.E.2d 40, 49 (2001). We agree with respondent that it

could not take Mr. Shifflet to trial without determining his competency, but that is not the precise issue before the Court today.

It is easy to confuse the issue of Mr. Shifflet's sanity at the time of the commission of the alleged crime and his competency to stand trial at some later time, but these issues are, and must remain, distinct. The statute gives the grand jury three choices when asked to indict a suspect: find the evidence sufficient and indict the accused, refuse to indict on the basis of insufficient evidence, or in appropriate cases, make a third choice and choose not to indict because the accused was not sane at the time of committing the act alleged:

> [W]hen a person in jail ... is not indicted by reason of his insanity at the time of committing the act, the grand jury shall certify that fact to the court; whereupon the court may order him to be sent to a state hospital for the insane, or to be discharged.

W. Va.Code § 62–2–12 (1923). In the great majority of cases, the sanity of the accused at the time of the offense will not be at issue, or will not be raised until a later point in the prosecution of the accused. The quoted language merely gives the grand jury the option of finding that the accused cannot be indicted for the offense charged, but might be a candidate for commitment to a mental hospital. If the grand jury does indict a person who was arguably insane at the time of the offense, that question of the defendant's sanity will still be addressed prior to trial.

The question of the accused's competency to stand trial is an entirely different matter. A person could be sane at the time of committing a crime, yet might not be competent to stand trial six months later. Conversely, a person could be insane at the time of committing a crime, but could be rendered competent to stand trial by treatment or medication. The respondent blurs this important distinction by claiming that the state could not present Mr. Shifflet's case to a grand jury without a determination that he

was competent to stand trial. There is simply no support for this argument.

■ Finally, the respondent argues that the time Mr. Shifflet spent in the mental hospital undergoing treatment should not be counted against the state's time limit of two terms to present the case to the grand jury. Respondent calls our attention to another case where a defendant claimed that the state improperly delayed his trial. In *State v. Rhodes*, 166 W.Va. 402, 274 S.E.2d 920 (1981), defendant Rhodes claimed that the state had violated the so-called "three term rule" of W. Va.Code § 62–3–21 (1959) by not trying him within three terms of court of his indictment. Defendant Rhodes had been found incompetent to stand trial and the ensuing treatment to restore his competency delayed the onset of his trial. While it is true that this Court found that any term of court during which the defendant is incompetent should not be counted against the three terms,[1] *Rhodes* deals with a different statute and is not applicable to the instant case.

■ With respect to respondent's final argument, there is simply no language in the instant statute that provides for a tolling of the time limit for any period the accused spends in a mental hospital. As we have often stated: "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968); *accord*, syl. pt 2, *Mallamo v. Town of Rivesville*, 197 W.Va. 616, 477 S.E.2d 525 (1996); *McKenzie v. Smith*, 212 W.Va. 288, 569 S.E.2d 809 (2002). Or, in other words, "[i]n any search for the meaning or proper applications of a statute, we first resort to the language itself." *Maikotter v. University of W. Va. Bd. of Trustees*, 206 W.Va. 691, 696, 527 S.E.2d 802, 807 (1999).

The statute says that "[a] person in jail *shall be discharged from imprisonment*" if not indicted by the end of the second term of court. While the statute does discuss what

---

1. The Court held that:

> Where a defendant is unable to be tried in a particular term because of his incompetency to stand trial, such term should not be counted

under our three-term statute, W. Va.Code, 62–3–21.

Syl. pt. 2, *State v. Rhodes*, 166 W.Va. 402, 274 S.E.2d 920 (1981).

happens if the grand jury believes the accused is insane at the time of the commission of the offense, the statute does not provide for an extension of the two term time limit for any period an accused spends in a state mental hospital. Thus we must reject this tolling argument put forth by the respondent.

The statute exists to protect a citizen from languishing in custody without indictment being made against him or her. A fundamental precept in our system of justice is that no person may be deprived of liberty without due process of law. Both our state and federal constitutions command that persons be charged with a crime and brought to trial as expeditiously as possible. As this Court discussed in a similar case 80 years ago:

> It will be observed that Blankenship says he was arrested on May 23, 1922, ... but he also expressly says that he has been continuously held in jail either in Logan or Jefferson county upon the same charge for which he is now detained and imprisoned, from May 23, 1922, up to and including the 30th day of January, 1923. This material and vital allegation is not denied by the return, and therefore must be considered as true. Is Blankenship, because of this fact, entitled to be released from imprisonment? Our statute—section 12, c. 158, Code (Code 1913, sec. 5561)—says so. It reads:

> "A person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer, unless it appear to the court that material witnesses for the state have been enticed or kept away, or are prevented from attendance by sickness or inevitable accident. * * *"

Failure to indict within two terms after he has been held releases him from imprisonment.

*Ex parte Blankenship*, 93 W.Va. 408, 410, 116 S.E. 751, 752 (1923). Ultimately the Court adopted the language of the statute as the sole syllabus point for the opinion. Though it now bears a new citation, our statute still reads largely as it did in 1923, and still commands the same result.

While we understand that there is no nefarious intent behind the state's handling of Mr. Shifflet's case, the statute exists to protect all of us and to make the extended incarceration of a person without indictment impossible. The record indicates that Mr. Shifflet indeed suffered from serious mental illness and that the lower court and the prosecutor's office each made a good faith effort to treat Mr. Shifflet fairly and deal with this case in an expeditious fashion. However, out of an abundance of caution, our Legislature has declared that an incarcerated person must have his or her case acted upon by a grand jury within two terms of court, period. In this case, the state failed to meet this burden, and so we must grant the requested writ of habeas corpus.[2]

We have not lost sight of the distinction between Mr. Shifflet's possible and the propriety of his incarceration. "It is a well established principle that the right of a person to the writ of habeas corpus depends on the illegality of his detention at the time of the filing of the petition and does not depend on his guilt or innocence." *State ex rel. Titus v. Hayes*, 150 W.Va. 151, 159, 144 S.E.2d 502, 507–08 (1965). The issue of Mr. Shifflet's guilt or innocence, of course, belongs to a jury of his peers. Our decision today does not mean that Mr. Shifflet cannot still be prosecuted for his alleged offenses.

2. Counsel for Mr. Shifflet, in a brief opposing respondent's motion to dismiss this case as moot, suggests that the January 7, 2003 indictment was defective, but this issue is not presently before the Court. Presuming that the January 7, 2003 indictment of Mr. Shifflet is valid, a question we do not reach in this opinion, we recognize that our holding may have little practical value for Mr. Shifflet, as he may now be incarcerated on the basis of the January 7, 2003 indictment.

As we noted in *Blankenship*, "[f]ailure to indict within two terms after he has been held releases him from imprisonment. Of course that does not discharge him from prosecution." *Ex parte Blankenship*, 93 W.Va. 408, 410, 116 S.E. 751, 752 (1923). As stated above, our holding today would not allow Mr. Shifflet to escape prosecution for his alleged crimes. However, the fact that the state took action and convened a special grand jury subsequent to Mr. Shifflet's petition for relief does not affect the validity of his original claim.

## IV.

## CONCLUSION

For the reasons stated, petitioner's request for a writ of habeas corpus is granted.

Writ granted.

Justices DAVIS and MAYNARD dissent and reserve the right to file dissenting opinions.

DAVIS, J., dissenting.

In this original jurisdiction proceeding the petitioner, John H. Shifflet, (hereinafter referred to as "Mr. Shifflet"), sought release from his confinement at a regional jail by means of a writ of habeas corpus. The majority opinion purported to grant Mr. Shifflet habeas relief. However, the majority opinion also indicated that he could not be released from confinement. I believe that the disposition reached by the majority opinion is legally unsound. Therefore, for the reasons set out below, I dissent.

### A.

### *A Remedy must Exist for Violation of the Two–Term Rule*

Mr. Shifflet argued that his indictment for bank robbery should be dismissed and he should be released from jail because he was incarcerated for over a year before he was indicted. West Virginia Code § 62–2–12 (1923) (Repl.Vol.2000) requires an incarcerated suspect to be indicted "before the end of

the second term of the court, at which he is held to answer." [1] The State conceded that the two-term rule was violated. However, the State also argued that the issue was moot and therefore the petition should be dismissed. The majority opinion determined that, while the issue was moot, the petition should not be dismissed as Mr. Shifflet's right to be indicted within two terms of court was an "issue of great public interest [that] should be examined[.]" [2] I disagree. I do not believe that the late indictment rendered the case moot. As I explain below, the majority opinion found the issue before the Court moot because of an erroneous interpretation of the relevant case law.

My research has revealed that this Court has directly addressed the application of the two-term rule on only one previous occasion. That decision is *Ex parte Blankenship*, 93 W.Va. 408, 116 S.E. 751 (1923) (discharging prisoner because of violation of statute). The majority opinion, relying upon *Blankenship*, concluded that a violation of the two-term rule *does not* discharge a suspect from prosecution on an indictment issued during an illegal incarceration. Consequently, under the majority's ruling a late indictment suffices to keep a suspect incarcerated pending trial.

In *Blankenship*, the defendant was incarcerated in violation of W. Va.Code § 62–2–12. Further, no indictment was pending at the time he sought habeas relief. This Court granted Mr. Blankenship's requested relief. Additionally, the Court observed that the

---

1. W. Va.Code § 62–2–12 (1923) (Repl.Vol.2000) states:

    A person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer, unless it appear to the court that material witnesses for the State have been enticed or kept away, or are prevented from attendance by sickness or inevitable accident, and except also that, when a person in jail, on a charge of having committed an indictable offense, is not indicted by reason of his insanity at the time of committing the act, the grand jury shall certify that fact to the court; whereupon the court may order him to be sent to a state hospital for the insane, or to be discharged.

    West Virginia Code § 62–2–12 is commonly referred to as the two-term rule.

2. In syllabus point 1 of *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), the Court established the test for determining whether to address a moot issue:

    Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

State could seek an indictment against the defendant after his release. In essence, *Blankenship* makes clear that a remedy exists for the violation of the two-term rule. The remedy is release from incarceration.

The majority opinion has, inartfully and by way of a footnote, expanded *Blankenship* to mean that a late indictment can cure a violation of the two-term rule and thereby preclude release from incarceration.[3] I do not believe *Blankenship* should have been so expanded. Support for my position is found in the jurisdiction of the State of Virginia.

A case similar to the instant case was decided by the Virginia Supreme Court in *Hall v. Commonwealth,* 78 Va. 678 (1884), *overruled on other grounds by Glover v. Commonwealth,* 86 Va. 382, 10 S.E. 420 (1889). The defendant in *Hall* was incarcerated in violation of Virginia's two-term rule[4] for the crime of horse stealing. After the indictment was issued, the defendant sought release and to have the indictment dismissed. The trial court denied the relief. The defendant was tried and convicted. On appeal, the defendant argued that the trial court erred in its ruling on the violation of the two-term rule. The Virginia Supreme Court agreed with the defendant and held that "there being no excuse for said failure to indict, the prisoner was entitled to his discharge."[5] *Hall,* 78 Va. at 678.

Taking the decisions in *Hall* and *Blankenship* together, I believe those cases stand for the following three propositions. First, a violation of the two-term rule is not cured by a later indictment. Second, a late indictment may be dismissed and a suspect released when there has been a violation of the two-term rule. Third, dismissal of an indictment for a violation of the two-term rule does not preclude the State from seeking another indictment on the same charge. To reach a different result, as did the majority opinion, would render the two-term rule virtually unenforceable so long as the state obtains an indictment subsequent to violating the rule. That is, to do "otherwise would allow a wrong to be inflicted for which no remedy exists." *Farley v. Sartin,* 195 W.Va. 671, 676–677, 466 S.E.2d 522, 527–528 (1995). Such a disposition is contrary to the "familiar maxim of the law that there is no wrong without a remedy[.]" *Clifton v. Clifton,* 83 W.Va. 149, 150, 98 S.E. 72 (1919). *See also State ex rel. Affiliated Constr. Trades Found. v. Vieweg,* 205 W.Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) ("As law students, we learn that in the law, for every wrong there is a remedy."); *Tanner v. Rite Aid of West Virginia, Inc.,* 194 W.Va. 643, 651 n. 12, 461 S.E.2d 149, 157 n. 12 (1995) ("It is the business of the law to remedy wrongs ..., even at the expense of [dismissing an indictment and releasing a prisoner], and it is a pitiful confession of incompetence on the part of any court of justice to deny relief on such grounds."); *Wallace v. Wallace,* 155 W.Va. 569, 575, 184 S.E.2d 327, 331 (1971) (" 'The maxim, "Ubi Jus, ibi remedium", liberally translated, declares that a legal wrong is the resultant of the violation of a legal right, for which the law provides a remedy.' " (citation omitted)). Because the majority has rendered the violation of W. Va.Code § 62–2–12 a wrong without a remedy, I must dissent from their interpretation of the statute and relevant case law.

**B.**

**The Majority Granted a Meaningless Writ**

The majority opinion stated that a violation of the two-term rule occurred "and so we must grant the requested writ of habeas corpus." However, in footnote 2 of the majority opinion the writ granted was rendered meaningless. The footnote opines that "we recognize that our holding may have little practical value for Mr. Shifflet, as he may now be incarcerated on the basis of the January 7, 2003 indictment." Assuming, for the

---

3. As I will discuss *infra,* the writ issued by the majority in this case cannot be exercised by Mr. Shifflet.

4. West Virginia's two-term rule, contained in W.Va.Code § 62–2–12, was taken verbatim from the statutes of Virginia.

5. The Virginia Supreme Court ultimately reversed the conviction because of insufficiency of evidence to prove the defendant was guilty of horse stealing.

sake of argument, that I agreed with the majority that the case was rendered moot because of the late indictment, I cannot agree with issuing a meaningless writ. Had I adopted the majority's position of mootness, I would have denied the writ.

Mr. Shifflet did not ask this Court to issue a meaningless writ. Mr. Shifflet sought a writ that released him from confinement. Indeed, that is the essence the writ. *See Lance v. McCoy,* 34 W.Va. 416, 421, 12 S.E. 728, 729 (1890) ("[T]hat great writ of the common law, stand[s] always ready, prompt, and adequate to vindicate personal liberty."). "As has been frequently said, this is the great writ of liberty, and is available ... whenever one is unlawfully restrained of his liberty." *Wright v. Wright,* 78 W.Va. 57, 60, 88 S.E. 606, 607 (1916). Moreover, "the great writ, which any citizen deprived of his liberty without due form of law may command, should in no case be [issued without full force and effect]." *State ex rel. Mays v. Brown,* 71 W.Va. 519, 530, 77 S.E. 243, 248 (1912) (Robinson, J., dissenting). As previously noted by this Court, "[i]n cases of this character, equity will, by [the great writ], prevent the present wrong and provide a remedy which can reach the whole mischief and secure the rights of all, both for the present and future[.]" *Arnold v. Board of Education of Capon Dist., Hampshire County,* 110 W.Va. 32, 156 S.E. 835, 836 (1931). In summary, no remedy is available from the writ issued by the majority. Mr. Shifflet was entitled to a writ that released him from jail and caused the indictment to be dismissed without prejudice.

For the reasons set out above, I respectfully dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.