IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

FILED

May 18, 2026

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-473

_____

STATE of WEST VIRGINIA ex rel. SONTÉ C. BUTLER,
Petitioner,

v.

MISTY ADAMS, SUPERINTENDENT,
NORTHERN REGIONAL JAIL,
Respondent.

_____

PETITION FOR WRIT OF HABEAS CORPUS

WRIT OF HABEAS CORPUS GRANTED

_____

Submitted: January 28, 2026
Filed: May 18, 2026

Matthew Brummond, Esq.                    John B. McCuskey, Esq.
Public Defender Services                   Attorney General
Appellate Advocacy Division                Michael R. Williams, Esq.
Charleston, West Virginia                  Solicitor General
Counsel for Petitioner Sonté C. Butler     Michele Duncan Bishop
                                           Senior Assistant Attorney General
                                           Office of the Attorney General
                                           Charleston, West Virginia,
                                           Counsel for Respondent Misty Adams,
                                           Superintendent, Northern Regional Jail

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE EWING dissents and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "'The Supreme Court of Appeals has original jurisdiction in cases of habeas corpus, mandamus and prohibition and appellate jurisdiction in all other cases mentioned in Article VIII, Section 3, of the Constitution of this State and in such additional cases as may be prescribed by law[.]' Syllabus Point 10 (in part), *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W. Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 582 S.E.2d 885 (2003).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      "Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may

appropriately be decided." Syl. Pt. 1, *Israel by Israel v. W. Va. Secondary Schools Activities Com'n,* 182 W. Va. 454, 388 S.E.2d 480 (1989).

4. "'The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *State v. McClain*, 247 W. Va. 423, 880 S.E.2d 889 (2022).

5. "'A statute that is ambiguous must be construed before it can be applied.' Syllabus Point 1, *Farley v. Buckalew,* 186 W. Va. 693, 414 S.E.2d 454 (1992)." Syl. Pt. 6, *Liberty Mut. Ins. Co. v. Morrisey*, 236 W. Va. 615, 760 S.E.2d 863 (2014).

6. ""It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, in part, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).' Syllabus Point 6, *State v. Butler,* 239 W. Va. 168, 799 S.E.2d 718 (2017)." Syl. Pt. 3, *In re D.K.*, __ W. Va. __, 923 S.E.2d 425 (2025).

7.     The two-term rule established in West Virginia Code section 62-2-12 (2020) is triggered when a defendant is arrested and jailed on a criminal charge.

8.     The term of court in which the defendant is arrested and jailed does not count as a "term" for the purpose of determining whether he or she was "indicted before the end of the second term of the court, at which he is held to answer," as required by West Virginia Code section 62-2-12 (2020).

9.     Whenever a defendant has been confined in violation of West Virginia Code section 62-2-12 (2020), the mandatory remedy is the defendant's immediate discharge from pre-indictment confinement.

WOOTON, Justice:

Sonté Butler ("the petitioner"), filed the instant Petition for Writ of Habeas Corpus in this Court, seeking discharge from incarceration on the ground that he was not indicted "before the end of the second term of the court at which he [was] held to answer" as required by West Virginia Code section 62-2-12 (2020) (discussed *infra* at length). The respondent, Misty Adams, Superintendent, Northern Regional Jail[1] ("the respondent"), contends that this case is moot and should therefore be dismissed, and that the petitioner was not held beyond the limits set forth in the statute.

After careful consideration of the parties' briefs and oral arguments, the appendix record, and the applicable law, we find that the issues raised in the petition, while moot, should be considered pursuant to the *Israel* test (discussed *infra*) and that the circuit court erred when it denied the petitioner's motion for discharge from pre-indictment confinement. Therefore, we grant the writ, while recognizing that we can no longer afford the petitioner any remedy or relief in this matter because it is moot.

---

[1] While this case was pending, Misty Adams replaced Shawn Straughn as Superintendent of the Northern Regional Jail. *See* W. Va. R. App. P. 41(c) ("When a public officer is a party to an appeal or other proceeding in the . . . Supreme Court in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and [his] successor is automatically substituted as a party.").

## I. FACTS AND PROCEDURAL BACKGROUND

As necessary background, we note that the Circuit Court of Ohio County, West Virginia, from which this case arose, has three terms of court in a calendar year which commence on the second Monday of January, May, and September, respectively. *See* W. Va. T.C.R. 2.01.

On August 15, 2023, which was within the May 2023 term of the circuit court, the petitioner was arrested on a charge of possession with intent to distribute four scheduled substances[2] and was jailed on a cash-only $10,000 bond which he was unable to post. On August 23, 2023, he signed a waiver of his right to have a preliminary hearing held within ten days of his arrest, *see* W. Va. R. Crim. P. 5(c);[3] a notation in the file indicates that negotiations with the State were ongoing. On October 30, 2023, which was within the September 2023 term of court, the petitioner moved to continue a preliminary hearing that had been scheduled, citing ongoing plea negotiations.

---

[2] *See* W. Va. Code § 60A-4-401 (2020).

[3] West Virginia Rule of Criminal Procedure 5(c) provides in relevant part that unless waived by a defendant, a preliminary examination "shall be held within a reasonable time but in any event not later than 10 days following the initial appearance if the defendant is in custody[.]"

On February 20, 2024, which was within the January 2024 term of court, a preliminary hearing was held in magistrate court, at the conclusion of which the petitioner was bound over. Thereafter, on May 21, 2024, which was within the May 2024 term of court, the petitioner filed a motion in the circuit court for reduction of bond, which was granted; however, the reduction in the amount of "cash up front"[4] was not sufficient to enable the petitioner, who is indigent, to secure his release. During the bond reduction hearing, defense counsel orally moved the court to release the petitioner from jail on the ground that his continuing confinement through four terms of court – May 2023, September 2023, January 2024, and now May 2024 – violated the "two-term rule" of West Virginia Code section 62-2-12, which provides that

> [a] person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer, unless it appear to the court that material witnesses for the State have been enticed or kept away, or are prevented from attendance by sickness or inevitable accident, and except also that, when a person in jail, on a charge of having committed an indictable offense, is not indicted by reason of his insanity at the time of committing the act, the grand jury shall certify that fact to the court; whereupon the court may order him to be sent to a state hospital for the insane, or to be discharged.[5]

---

[4] The circuit court changed what had been a $10,000 cash-only bond to a $40,000 cash or surety bond.

[5] The parties agree that neither of the exceptions to the two-term rule apply in this case.

3

The State conceded that the petitioner would not and could not be indicted until a grand jury was convened in the September 2024 term of court.[6] The circuit court took the matter under advisement, and the following day, May 22, 2024, defense counsel followed up his oral motion with a written motion seeking the petitioner's discharge. On June 6, 2024, the court issued a written order denying the petitioner's motion on two grounds: first, the court concluded that the two-term "clock" did not begin to run until the petitioner was "held to answer in circuit court," which in the court's view occurred when he was bound over by the magistrate at the conclusion of his preliminary hearing; and second, the court concluded that neither the May 2023 term nor the September 2023 term counted against the State because the petitioner had waived his right to a preliminary hearing in August of 2023, and then moved to continue a preliminary hearing in October of 2023. In this latter regard, the court wrote that "[t]his Court cannot reward the [petitioner] with discharge when it was by his own hand that he elected to delay earlier required proceedings."[7]

_____

[6] There were still more than three months remaining in the May 2024, term of court when the petitioner raised the two-term-rule violation as an issue. However, the grand jury empaneled for that term had not taken up the petitioner's case before it was discharged, and the prosecutor explained that for this reason the earliest possible date on which the petitioner could be indicted would be in the September 2024 term.

[7] As set forth in detail *infra*, the only requirement in our law for holding a preliminary hearing is found in Rule 5(c) of the West Virginia Rules of Criminal Procedure, which requires that unless a defendant waives his right or is sooner indicted, a preliminary hearing "shall be held within a reasonable time but in any event not more than 10 days following the initial appearance if the defendant is in custody and no later than 20 days if the defendant is not in custody[.]"

4

Almost immediately after the court entered its order, the State filed its own motion in support of the petitioner's motion. The State conceded that the responsibility for the delay in seeking an indictment lay with the State, not the petitioner, and requested that the charge against the petitioner be dismissed without prejudice so that the State could indict him in the future. On June 17, 2024, the court dismissed the State's motion as moot.

Thereafter, events moved quickly. On July 29, 2024, the petitioner filed an original jurisdiction petition in this Court for writ of habeas corpus. On September 10, 2024, in the September 2024 term of court, the State indicted him on four felony counts of possession with intent to distribute methamphetamine, fentanyl, cocaine, and heroin, respectively. *See infra* note 2. Finally, on December 16, 2024, the petitioner entered a non-conditional plea of guilty to the methamphetamine, cocaine, and heroin counts, in return for the State's dismissal of the fentanyl count and its agreement that it would not pursue a recidivist charge. The plea agreement specifically waived the petitioner's right to challenge the validity of the plea by direct appeal, to appeal any pretrial rulings, or to challenge the validity of the plea agreement "in any legal proceeding of any nature." The petitioner was sentenced to a term of imprisonment of two to thirty years.

## II.  STANDARD OF REVIEW

It is well established in our case law that

"'[t]he Supreme Court of Appeals has original jurisdiction in cases of habeas corpus, mandamus and prohibition and appellate jurisdiction in all other cases mentioned in Article VIII, Section 3, of the Constitution of this State and in such additional cases as may be prescribed by law[.]' Syllabus Point 10 (in part), *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)."

Syl. Pt. 1, *State ex rel. McGraw v. Telecheck Servs., Inc.*, 213 W. Va. 438, 440, 582 S.E.2d 885, 887 (2003). In this case, where we are tasked with construing the language of West Virginia Code section 62-2-12, our review is de novo. *See, e.g.*, Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

### III.  DISCUSSION

At the outset of our analysis, we must consider whether this case is moot and, if so, whether this Court should nonetheless address the issues raised herein. "Whether a case has been rendered moot depends upon an examination of the particular facts of a case." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 155, 697 S.E.2d 740, 747 (2010). "Our general rule is that '[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.'" *State v. Foye*, 251 W. Va. 669, 675, 916 S.E.2d 88, 94 (2025) (footnote and citations omitted). "Mootness is a jurisdictional question. . . . [and] [g]enerally, moot questions are not proper for consideration by this

6

Court." *State ex rel. W. Va. Secondary Sch. Activities Comm'n v. Cuomo*, 247 W. Va. 324, 331, 880 S.E.2d 46, 53 (2022).

Our review of the record indicates that this petition for extraordinary relief was rendered moot when the petitioner was indicted on September 10, 2024, and, as a result, was no longer "confined in jail, on a criminal charge" without having been indicted, in violation of the two-term rule. In short, although this action was not moot at the time it was filed, it was mooted by subsequent events. *See State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 156, 697 S.E.2d 740, 748 (2010) ("[A] case, although live at the start, becomes moot when intervening acts destroy the interest of a party to the adjudication.") (citing *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 593–94 (1984) (Blackmun, J., dissenting)); *cf. State v. White*, No. 13-0935, 2014 WL 4347130, at *3 (W. Va. Aug. 29, 2014) (memorandum decision) (analyzing the "one-term rule" of West Virginia Code section 62-3-1 (2020), *see infra* note 9, and concluding that pursuant to the mootness analysis in *Ex parte Blankenship*, 93 W. Va. 408, 116 S.E. 751 (1923) and *State ex rel. Shifflet v. Rudloff*, 213 W. Va. 404, 582 S.E.2d 851 (2003), the petitioner's conviction, sentence, and incarceration mooted a pre-conviction confinement issue raised on direct appeal).[8]

---

[8] The petitioner's counsel conceded at oral argument that the case is moot.

Our finding that a case is moot is not, however, the end of the analysis, as "a court may determine that an otherwise moot case may be considered due to the nature of the issues raised or the manner in which such issues are presented." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W. Va. 148, 156, 697 S.E.2d 740, 748 (2010). For the purpose of making such a determination, this Court has established a now-familiar analytical framework known as "the *Israel* test":

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

Syl. Pt. 1, *Israel by Israel v. W. Va. Secondary Sch, Activities Comm'n,* 182 W.Va. 454, 388 S.E.2d 480 (1989).

We easily conclude that this case falls within all three factors of the *Israel* test. First, the collateral consequences to a defendant who may be confined in jail for a lengthy period of time, in a legal limbo of sorts, are enormous, as this case well illustrates: 359 days elapsed between the date of the petitioner's arrest and the date on which he was finally indicted, far beyond the time limit specified in West Virginia Code section 62-2-12.

8

Second, the questions presented in this case are of great public interest, as their answers determine how long a person may be held in jail upon a felony charge without being indicted. We find value and utility in addressing these important questions for the benefit of the bar, the public, and the circuit courts. Third, and finally, this case presents an issue which may be "repeatedly presented to the trial court, yet escape review[.]" *Id*. Once the State indicts a defendant who has been held in violation of the two-term rule and he or she is no longer confined "in jail, on a criminal charge," any challenge to the length of his pre-indictment confinement is rendered moot.

Accordingly, we proceed to the merits of the case. As set forth *supra*, the relevant language of West Virginia Code section 62-2-12 (sometimes referred to herein as "the two-term rule") provides that "[a] person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer[.]" The parties' arguments in this case focus on the last seventeen words of the statute, and this Court is presented with two issues of statutory construction: (1) is the two-term rule triggered at the time of a defendant's arrest and incarceration, or at the time he or she is bound over by a magistrate; and (2) does the term of court in which the two-term rule is triggered count as a "term" for the purposes of determining whether the defendant was "indicted before the end of the second term of the court, at which he is held to answer."

9

We begin our analysis with this Court's decision in *Blankenship*, which a century later remains the lynchpin in any analysis of the two-term rule. The case arose in Logan County, West Virginia, where it may necessarily be inferred from the text that at the time of the events described there were four terms of court: January, April, July, and October. In *Blankenship*, the defendant was arrested and jailed in Logan County on May 23, 1922, in the April 1922 term of court, on charges of murdering John Gore, John Caffigo, and James Munsey. On an unspecified date in January 1923, he was indicted solely on the charge of murdering Gore, and on January 11, 1923, he was freed on bond. On February 14, 1923, he was arrested in Jefferson County on charges of murdering John Caffigo and James Munsey and confined in Jefferson and then Logan County thereafter, his motion for bail on these latter charges having been denied.

Defendant Blankenship filed a petition for writ of habeas corpus in this Court, alleging that he was entitled to release from confinement since he had been continuously jailed from May 23, 1922, on the charges of murdering Caffigo and Munsey (as well as Gore), and thus more than two full terms of court had elapsed – the July 1922 term and the October 1922 term – without an indictment having been handed down on those charges. *Blankenship*, 93 W. Va. at 409, 116 S.E. at 752. This Court agreed:

> Failure to indict within two terms after he has been held releases him from imprisonment. Of course that does not discharge him from prosecution. That is another question. He may be indicted later, and is now being held under bond to answer an indictment for the murder of John Gore. Of course

10

> he cannot be relieved of his bond to answer that indictment. He is only seeking to be released from imprisonment for the charge which has been preferred against him in the new warrant, and under which he is now held, and we think, under the facts here alleged and not denied and under the plain provisions of the statute above quoted, he is entitled to release from his present imprisonment.

*Id*. at 410, 116 S.E. at 752 (citation omitted); *see also Shifflet v. Rudloff*, 213 W. Va. at 409, 582 S.E.2d at 856 ("The record indicates that Mr. Shifflet indeed suffered from serious mental illness and that the lower court and the prosecutor's office each made a good faith effort to treat Mr. Shifflet fairly and deal with this case in an expeditious fashion. However, out of an abundance of caution, our Legislature has declared that an incarcerated person must have his or her case acted upon by a grand jury within two terms of court, period. In this case, the state failed to meet this burden, and so we must grant the requested writ of habeas corpus.") (emphasis added)).

With the foregoing as background, we turn to the specific issues raised in this case.

1.

West Virginia Code section 62-2-12 provides in relevant part that "[a] person in jail, on a criminal charge, shall be discharged from imprisonment if he be not indicted before the end of the second term of the court, at which he is held to answer[.]" The petitioner argues that the two-term rule is triggered or, in other words, the clock begins to

11

run at the time a defendant is arrested and jailed, while the respondent contends, and the circuit court so held, that the clock begins to run when a defendant waives preliminary hearing or is bound over following a magistrate's finding of probable cause. This issue is key to resolution of the instant case, where the petitioner was arrested and had his initial appearance in the May 2023 term of court, but was not bound over until the January 2024 term.

The parties make compelling arguments for and against the petitioner's claim that a defendant is held to answer, and thus the two-term rule begins to run, at the time the defendant is arrested and jailed. The petitioner argues that the "entire point" of the two-term rule is to bring cases to resolution without undue delay when a defendant is confined without bond. *See Shifflet*, 213 W. Va. at 409, 582 S.E.2d at 856 ("The statute exists to protect a citizen from languishing in custody without indictment being made against him or her. A fundamental precept in our system of justice is that no person may be deprived of liberty without due process of law. Both our state and federal constitutions command that persons be charged with a crime and brought to trial as expeditiously as possible."). The petitioner also notes that historically, pleas were entered at the initial arraignment which was held on or very close to the time of a defendant's arrest, *see Blankenship*, 93 W. Va. at 408, 116 S.E. at 752; thus, the Legislature would have reasonably believed that an individual was typically "held to answer" at that time.

12

In contrast, the respondent contends that the words "held to answer" refer to the time when a preliminary hearing has been held or waived, because West Virginia Code section 62-1-8 (2020), which deals with preliminary hearings, provides that where, at the conclusion of the hearing, "it appears from the evidence that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the justice [now magistrate] shall forthwith hold him to answer *in the court having jurisdiction to try criminal cases*." (Emphasis added). We disagree, as the two statutes at issue serve very different purposes. The two-term rule sets the *ending* point at which an individual can continue to be *confined* when he has not yet even been indicted, whereas West Virginia Code section 62-1-8 sets the *starting* point for the individual's speedy *trial* rights.[9] Given the clear intent of the Legislature to set a finite limit on the length of time a defendant can be held in pre-indictment custody, *see* discussion *infra*, we decline to adopt an interpretation of the statutory language that would justify a longer period of pre-indictment confinement – here, a minimum of five additional months. Finally, the respondent argues that because the petitioner waived his right to a preliminary hearing in the May 2023 term

---

[9] *See* W. Va. Code § 62-3-1 (2020) ("When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term."); and W. Va. Code § 62-3-21 (2020) ("Every person charged by presentment or indictment with a felony or misdemeanor and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial[.])"

of court and moved to continue a scheduled hearing in the September 2023 term of court, he waived his right to have either term considered in a two-term rule analysis.

We begin by rejecting the respondent's waiver argument because a preliminary hearing is not a condition precedent to indictment. *See supra* note 7. Indeed, in many cases the State indicts an individual soon after arrest for the specific purpose of forestalling the necessity of a preliminary hearing. Thus, in this case the fact that a preliminary hearing was not held in either the May 2023 or the September 2023 term of court did not impede the State's ability to proceed with an indictment. *See, e.g.*, Syl. Pt. 5, in part, *State v. Davis*, 236 W. Va. 550, 782 S.E.2d 423 (2015) ("Where the State proceeds . . . to arrest the accused for an offense which must be brought before the grand jury, the defendant is entitled to a preliminary hearing under W. Va. Code, 62–1–8 (1965). If, however, the State elects to indict him without a preliminary hearing or before one can be held, the preliminary hearing is not required.") (citing Syl. Pt. 3, *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 268 S.E.2d 45 (1980)). Indeed, there are many cases where a defendant is indicted without ever having been arrested.

This principle is well illustrated in *Shifflet*, where the State claimed, in essence, that the terms of court in which the defendant moved for and then underwent a competency evaluation (all of which took months) did not count for purposes of determining whether he had been confined beyond the limits of the two-term rule. This

14

Court disagreed, finding that the State was not precluded from securing an indictment while the competency evaluation was pending:

> A person could be sane at the time of committing a crime, yet might not be competent to stand trial six months later. Conversely, a person could be insane at the time of committing a crime, but could be rendered competent to stand trial by treatment or medication. The respondent blurs this important distinction by claiming that the state could not present Mr. Shifflet's case to a grand jury without a determination that he was competent to stand trial. There is simply no support for this argument.

*Shifflet*, 213 W. Va. at 408, 582 S.E.2d at 855. Similarly, in the instant case the State was not precluded from seeking an indictment in the absence of a preliminary hearing, as a preliminary hearing was not, as the circuit court characterized it, an "earlier required proceeding[]."

As is readily apparent from the foregoing, there are cogent arguments to be made on both sides of the issue here: under West Virginia Code section 62-2-12, when does the clock begin to run on the two-term rule? Inasmuch as our case law provides no definitive answer, we turn to well-established principles of statutory construction to answer the question presented. We begin with the lodestar principle that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *State v.*

*Fuller*, 239 W. Va. 203, 207, 800 S.E.2d 241, 245 (2017). Thus, our initial inquiry is to determine whether the specific phrase at issue, "held to answer," is ambiguous, because "'[a] statute that is ambiguous must be construed before it can be applied.' Syllabus Point 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992)." *Liberty Mut.*, 236 W. Va. at 617, 760 S.E.2d at 865, Syl. Pt. 6.

We easily conclude that West Virginia Code section 62-2-12 contains an ambiguity: clearly, reasonable minds may disagree as to whether the phrase "held to answer" means "held to answer in circuit court." The respondent implicitly concedes that the statute is ambiguous when it asks this Court to construe the statute by importing language from an entirely different statute, West Virginia Code section 62-1-8, that governs an entirely different stage in a criminal proceeding and has an entirely different purpose. In that regard, we have held that

> "'[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, in part, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013).' Syllabus Point 6, *State v. Butler*, 239 W. Va. 168, 799 S.E.2d 718 (2017)."

Syl. Pt. 3, *In re D.K.*, __ W. Va. __, 923 S.E.2d 425 (2025). Applying this principle to the instant case, the Legislature could have specified where one is "held to answer," just as it did in West Virginia Code section 62-1-8 when it specified that where probable cause is

16

established in a preliminary hearing, thereafter a defendant is held to answer "in the court having jurisdiction to try criminal cases." *See id*.

In construing the phrase "held to answer," we are mindful that "'[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus point 1, *Smith v. State Workmen's Compensation Commissioner*, 159 W. Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *State v. McClain*, 247 W. Va. 423, 880 S.E.2d 889 (2022). We believe that the intent of the Legislature was correctly articulated in *Shifflet*, where this Court noted that

> [t]he statute exists to protect a citizen from languishing in custody without indictment being made against him or her. A fundamental precept in our system of justice is that no person may be deprived of liberty without due process of law. Both our state and federal constitutions command that persons be charged with a crime and brought to trial as expeditiously as possible.

*Shifflet*, 213 W. Va. at 409, 582 S.E.2d at 856. Here, we note again that if we were to adopt the circuit court's ruling that the clock did not begin to run until the January 2024 term of court, we would be sanctioning what was an untoward delay in the resolution of the petitioner's case: he was held in jail for 359 days – just shy of a full year – before he was finally indicted.[10]

---

[10] Although the petitioner contends that this delay violated his due process rights, he did not put any meat on the bones of a constitutional argument either in his briefs or during

In light of the foregoing, we conclude that the circuit court's ruling was neither compelled by our authorities nor consistent with legislative intent. Given that the State always has the option to indict before a preliminary hearing is held, we find that it would be manifestly unfair to require that a hearing be waived or conducted, and the defendant bound over, before the clock even begins to run on the requirement that the defendant be released if not indicted within two terms of court. Accordingly, we hold that the two-term rule established in West Virginia Code section 62-2-12 (2020) is triggered when a defendant is arrested and jailed on a criminal charge.

2.

The second question for resolution is whether the term of court in which the petitioner was arrested and jailed, i.e., the May 2023 term of court, counts in determining whether he was "indicted before the end of the second term of the court, at which he is held to answer." *See id*. § 62-2-12. In this regard, the respondent contends that the second term of the court is the second full term following the term in which a defendant is arrested and jailed. In his initial oral argument, the petitioner's counsel conceded that the term in which a defendant is arrested and jailed does not count; however, counsel subsequently reversed his position during his rebuttal argument.

---

oral argument. Indeed, his reference to due process may fairly be deemed a glancing one. Thus, this Court will not address the issue. *See* W. Va. R. App. P. 10()(7) (requiring that argument must "clearly exhibit[] the points of fact and law presented, the standard of review applicable, and cite[] the authorities relied on[.])"

18

We agree with the respondent's position on this point because this issue has already been decided in *Blankenship*, and the doctrine of stare decisis suggests that we have no reason to deviate from that precedent. As we have explained, "[s]tare decisis is not a rule of law but is a matter of judicial policy. . . . It is a policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation." *See Woodrum v. Johnson*, 210 W. Va. 762, 766 n.8, 559 S.E.2d 908, 912 n.8 (2001) (citing *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974)). In this case, we can discern no basis on which to conclude that an urgent reason exists requiring deviation from *Blankenship*, where, in determining the operation of the statutory two-term rule, this Court did not count the term of court in which the defendant was arrested and jailed. More specifically, we held that the defendant, who had been arrested and confined in May of 1922, during the April 1922 term of court, was entitled to release from confinement because he was not indicted in either of the two full terms of court which followed, the July 1922 and October 1922 terms. 91 W. Va. at 410, 116 S.E. at 752.[11] *Cf. Bell v. Com.*, 49 Va. 600 (1851) and *Hall v. Com.*, 78 Va. 678 (1884)[12] (discussing Virginia's two-term rule, a forerunner of our own rule).

---

[11] Eighty years later, after discussing the legal analysis of West Virginia Code section 62-2-12 which was set forth in *Blankenship*, this Court concluded in *Shifflet* that "[t]hough it now bears a new citation, our statute still reads largely as it did in 1923, and still commands the same result." *Shifflet*, 213 W. Va. at 409, 582 S.E.2d at 856.

[12] *Hall* was subsequently overruled in *Glover v. Com.*, 86 Va. 382, 10 S.E. 420 (1889) on a point having no relevance here: how to determine when a term of court actually commenced under the law existing in Virginia at that time.

19

Accordingly, we conclude that the procedure set forth in *Blankenship* best serves the legislative purpose in enacting the two-term rule, and we therefore hold that the term of court in which a defendant is arrested and jailed does not count as a "term" for the purpose of determining whether he or she was "indicted before the end of the second term of the court, at which he is held to answer," as required by West Virginia Code section 62-2-12 (2020).

Applying our holding to the facts of this case, we conclude that the State failed to indict the petitioner within the time limit mandated by the two-term rule. It is undisputed that the petitioner was arrested and jailed in the May 2023 term of court, which, as we have held, does not count in the two-term calculation. Therefore, the State was required to indict the petitioner within the next two terms of court, which were the September 2023 term and the January 2024 term. It did not do so, and it does not matter what reason is given for its failure;[13] as we observed in *Shifflet*, there are only two statutory exceptions to the two-term rule, to-wit: that a material witness has been enticed or kept away or is otherwise prevented from attendance by sickness or inevitable accident, or that the defendant was insane at the time he or she committed the act. *See id*. § 62-2-12. Neither exception applies in the instant case. The two-term rule was violated when the petitioner was held in custody and not indicted in either the September 2023 or the January 2024 term

---

[13] The State informed the circuit court that it could not indict the petitioner during the May 2023 term of court because it did not yet have the results of lab analyses of the substances found in his possession.

20

of the circuit court, and the circuit court erred in denying the petitioner's motion for discharge from pre-indictment confinement.

In light of the foregoing, we find that the circuit court erred when it denied the petitioner's motion for discharge from pre-indictment confinement that exceeded the limits set forth in West Virginia Code section 62-2-12. The statute plainly requires, as we now hold, that whenever a defendant has been confined in violation of West Virginia Code section 62-2-12, the mandatory remedy is the defendant's immediate discharge from pre-indictment confinement. We caution the lower courts that a circuit court has no discretion to deny a defendant's motion for discharge from pre-indictment confinement if the defendant has been held in violation of the two-term rule.

However, we recognize that the writ being granted today does not afford the petitioner any form of relief at this time.[14] The sole remedy provided under West Virginia Code section 62-2-12 is release from pre-indictment confinement, a ship that has long since sailed in this case. *See Glover*, 86 Va. at 387, 10 S.E. at 422 (1889) (no relief available to appellant whose motion for release from custody was erroneously denied by lower court, because "he is now detained in custody, not by virtue of the original commitment or the

---

[14] As noted *supra*, although this proceeding is before the Court on a petition for writ of habeas corpus, its essence is a challenge to the circuit court's order denying the petitioner's motion for release.

21

order overruling the motion, *but the final judgment in the case*.") (Emphasis added). West Virginia Code section 62-2-12 is a narrowly drawn statute that applies only to the permissible length of a defendant's pre-indictment confinement. As such, a defendant held in violation of the two-term rule is entitled only to the narrow remedy of release from pre-indictment confinement.[15] A violation of West Virginia Code 62-2-12 does not render a subsequent indictment against the defendant defective or invalid, nor does such a violation otherwise have any bearing on the merits of the defendant's criminal case. By granting the requested writ of habeas corpus in this moot matter, we do not afford the petitioner any relief from his subsequent conviction or sentence, including from revocation of parole.[16] Nonetheless, at the time of the petitioner's motion for discharge to the circuit court, the petitioner was clearly entitled to release from his pre-indictment confinement, and the circuit court erred in denying his motion.

## IV. CONCLUSION

For the foregoing reasons, the petitioner's request for a writ of habeas corpus is granted.

Writ Granted.

---

[15] We, therefore, find no merit to the petitioner's arguments that the petitioner is entitled to additional forms of relief not contemplated by West Virginia Code section 62-2-12.

[16] We are informed that during the pendency of this proceeding the petitioner was granted parole, which was subsequently revoked.

22